CLIFFORD FLATH *et al.*, Plaintiffs-Appellees, v. MADISON METAL SERVICES, INC., Defendant-Appellant.

Fifth District   No. 5—90—0079

Opinion filed April 18, 1991.

368

Robert W. Wilson and John R. Abell, both of Evans & Dixon, of Edwardsville, for appellant.

Grey Chatham, of Chatham & Babka, of Belleville, for appellees.

JUSTICE WELCH delivered the opinion of the court:

This cause of action arose on May 29, 1986, when plaintiff, Clifford Flath, was injured while securing a load of coiled steel to his flatbed truck on the premises of defendant, Madison Metal Services, Inc. Plaintiff, Clifford Flath, filed his complaint in the circuit court of St. Clair County on July 24, 1986. This complaint was subsequently amended to allege defendant's negligence in that defendant:

"a) Negligently and carelessly failed to provide the plaintiff with a safe place to properly secure his load in that there was debris and other materials on or about the loading site.

b) Negligently and carelessly failed to provide a loading area sufficient for plaintiff to secure the load.

c) Negligently and carelessly directed the plaintiff to park his truck in an area that would not allow him to properly secure his load."

In the same complaint, plaintiff's wife, Shirley Flath, brought an action against defendant for loss of consortium.

Following a jury trial, the jury returned with a verdict in favor of plaintiff Clifford Flath in the amount of $90,000 ($112,500 reduced by 20% contributory negligence), and in favor of plaintiff Shirley Flath in the amount of $20,000. Judgment was entered on the verdicts on November 9, 1989. Defendant brings this appeal, raising several claims of error. For the reasons which follow, we affirm as modified.

At the time of the accident, plaintiff was working as an independent contractor for Eck Miller Transportation Corporation hauling steel on a flatbed tractor/trailer which he owned. Plaintiff had been working as an over-the-road truck driver for over 30 years.

At approximately 3 p.m. on the date of the accident, plaintiff agreed to haul a load of steel coils from the defendant's facility. Plaintiff drove his flatbed tractor/trailer from the Eck Miller facility to defendant's facility, where, after stopping at the office, he was directed to the loading area. Plaintiff backed his tractor/trailer into the loading area inside defendant's premises, as directed by defendant. Defendant had complete control over the location of plaintiff's truck during the loading. Plaintiff's truck was then loaded by defendant with seven coils of steel weighing a total of 42,000 pounds. Although the trailer was loaded by defendant's employee, plaintiff directed the placement of the coils on the trailer. The coils were loaded with the holes or eyes facing the back and front of the trailer. This was done so that if the load shifted or came loose, the coils would roll off the sides of the trailer rather than toward the front where the cab was.

Plaintiff was solely responsible for securing the coils to the trailer once they were loaded. Plaintiff owned his own equipment for securing the load. The steel coils are secured by means of heavy chains which are run through the eyes of the coils and fastened to the sides of the trailer. The chains are tightened by means of a slack adjuster. A slack adjuster is a device with a lever handle on it which pulls the chain, link by link, into a tighter position. Plaintiff, like most truck drivers, used a "cheater pipe" on the handle of the slack adjuster. The cheater pipe fits over the handle on the slack adjuster to lengthen it, providing more leverage to the operator.

Plaintiff testified that he normally likes to tighten his chains while standing on the ground beside his truck so that he is not in danger of falling from the truck should slack suddenly appear in the chains. However, in the instant case, the ground along the driver's side of plaintiff's truck was full of defendant's materials, making it impossible for plaintiff to walk or stand along the driver's side of his trailer. Consequently, plaintiff elected to tighten his chains while standing up on the bed of his

trailer. The evidence indicates that along the passenger side of the trailer the ground was uncluttered and clear.

Plaintiff was standing close to the center of the trailer with the chain in the slack adjuster. He placed his cheater pipe on the handle of the slack adjuster and was pushing down on the handle toward the bed of the trailer when suddenly slack appeared in the chain. Plaintiff lost his balance and control and fell off the trailer onto the ground on the driver's side of the trailer. Plaintiff broke both wrists and his left ankle in the fall.

An ambulance was summoned. An attendant testified that he had trouble treating and removing plaintiff from the area because plaintiff had fallen between his truck and defendant's materials on the ground, and there was very little room to maneuver.

Plaintiff required surgery on his broken ankle, including the placement of pins and screws. However, plaintiff's recovery was excellent and his prognosis good.

At trial, defendant presented evidence of a sign posted in the loading area notifying truck drivers to tarp and secure their loads outside the building. Testimony indicated, however, that drivers often secured and tarped their loads while still inside the building, especially when it was raining, and that defendant made no objection to this unless other trucks were waiting to use the area. On the day of plaintiff's accident, there were no other trucks waiting to use the loading area. Plaintiff testified that Department of Transportation regulations and those of Eck Miller required that the load be secured prior to the truck being moved. Plaintiff also testified that he was afraid to move the truck outside before the load was secured because there was a slight dip or depression in the ground just outside the building. Plaintiff feared that taking his truck over this dip with an unsecured load might cause the load to shift and fall off the truck, causing damage and injury.

Defendant's first argument on appeal is as follows: "I. Mr. Flath did not establish by a preponderance of evidence that his injuries were in any way connected with an alleged unsafe condition on the Metal Services premises." Defendant presents three subparts to this argument: "a. Mr. Flath failed to establish that Metal Services owed him a duty to provide a completely unobstructed loading area"; "b. Metal Services has no liability to Mr. Flath because the dangers on the loading dock, if any, were open and obvious to Mr. Flath. Furthermore, the harm which befell Mr. Flath was not the type of harm which Metal Services could have reasonably anticipated or prevented"; and "c. The evidence failed to establish that Mr. Flath risked greater injury by loading from the bed of the trailer rather than from the ground." Distilling what we can from

the body of defendant's brief and its oral argument before us, it appears that defendant is contending that, under the facts of this case, it owed no duty to plaintiff to provide him with a completely unobstructed loading area because plaintiff could have avoided the obstruction by securing his load from the ground on the passenger side of the truck, or by driving the truck forward out of the building prior to securing the load, and that, in any event, the danger of the obstruction was open and obvious to plaintiff and there was no evidence that plaintiff was distracted from the obstruction. Subpart c of defendant's argument contends that the evidence failed to show that it was more dangerous for plaintiff to secure the load from the trailer bed than from the ground. Thus, defendant argues, the jury's verdict in favor of plaintiff is against the manifest weight of the evidence.

■ It appears that defendant has confused the question of the existence of a duty with the question of the breach of that duty, and that what defendant really means to argue before us is that plaintiff failed to establish by a preponderance of the evidence that defendant *breached* a duty owed to plaintiff. We conclude this because, of course, the question of whether a duty is owed by a landowner to an invitee on its premises is a question of law to be decided by the court, and not a question of fact to be decided by the jury. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226.) On the other hand, the question of whether a duty was breached is a question of fact for the jury, and the jury's resolution of that question may well be against the manifest weight of the evidence. (*Shaffer v. Mays* (1986), 140 Ill. App. 3d 779, 783, 489 N.E.2d 35, 37.) However, regardless of whether we approach defendant's argument from the question of whether defendant owed a duty to plaintiff under the circumstances of this case, or the question of whether defendant breached a duty to plaintiff, the result is the same.

■ It is clear that defendant owed plaintiff, a business invitee on its premises, a general duty to use reasonable and ordinary care in keeping the premises reasonably safe. (*Courtney v. Allied Filter Engineering, Inc.* (1989), 181 Ill. App. 3d 222, 226, 536 N.E.2d 952, 956.) This duty has been more specifically defined by section 343 of the Restatement (Second) of Torts, which was incorporated into the common law of Illinois by *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 468, 343 N.E.2d 465, 472, as follows:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts §343, at 215-16 (1965).

■ Defendant first argues that the presence of materials on the floor next to the driver's side of the trailer did not create an unreasonably dangerous condition because plaintiff could have secured his load from the ground on the passenger side of the truck or by driving the truck out of the building and securing the load on the clear driver's side. Thus, defendant argues, it could not have breached any duty to plaintiff by failing to protect plaintiff from the condition. However, for reasons which do not clearly appear in the record, plaintiff felt the need to secure his load on the driver's side of the trailer. Because obstructions prevented him from doing so from the ground, plaintiff was forced to secure the load while standing on the trailer bed, from which he fell, sustaining injuries. We find this is sufficient to conclude that the presence of defendant's materials along the driver's side of the loading area created an unreasonable risk of harm to plaintiff. That plaintiff might have been able to secure his load from the ground on the passenger side of the trailer, or by driving the truck forward out of the building, may reflect on the degree of plaintiff's comparative fault, but does not make the obstruction any less dangerous.

■ Defendant also argues that it did not breach any duty to plaintiff because the danger of the obstruction was open and obvious to plaintiff and there was no evidence that plaintiff was distracted in any way from the open and obvious dangerous condition. Defendant is correct that a possessor of land is not liable to an invitee for harm caused by a condition on the land the danger of which is known or obvious to the invitee unless the possessor should anticipate the harm despite such knowledge or obviousness. (*Courtney v. Allied Filter Engineering, Inc.* (1989), 181 Ill. App. 3d 222, 227, 536 N.E.2d 952, 956.) The possessor should anticipate the harm despite the dangerous condition's obviousness when the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it, or where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk of doing so. *Courtney*, 181 Ill. App. 3d at 227, 536 N.E.2d at 956.

■ In the instant case, the obstruction on the ground on the driver's side of the trailer was dangerous because it forced plaintiff to secure his load while standing on the bed of the trailer rather than on the ground. While this danger was obvious and known to plaintiff, we think defendant should have reasonably expected that plaintiff would proceed to encounter the danger because, to a reasonable man in plaintiff's position, the advantages of doing so would have outweighed the apparent risk of doing so. Plaintiff had no choice but to secure his load. Certainly it was reasonably foreseeable by defendant that plaintiff might climb onto the trailer to do so. It was a common practice, of which defendant was aware, for truckers to secure their loads while in the building rather than driving forward out of the building. According to plaintiff's testimony, moving the truck forward with an unsecured load would have entailed some risk in itself. Furthermore, that plaintiff might have been able to secure his load from the ground on the passenger side of the trailer does not make it reasonably unforeseeable to defendant that plaintiff would choose to do so from the trailer bed instead, although it might reflect on the degree of plaintiff's comparative fault. We think the evidence is sufficient to conclude that defendant should have expected plaintiff would encounter the risk of securing his load from atop his trailer bed, notwithstanding his knowledge of the risk, and should have anticipated the harm to plaintiff despite the obviousness of the danger.

■ Finally, defendant argues that the evidence failed to show that it was more dangerous to plaintiff to secure the load from atop the trailer bed than from the ground. The evidence shows that plaintiff incurred injuries from his fall off the trailer bed. We think it is obvious that a fall off a trailer bed is more likely to cause injury than a fall when standing on the ground.

In sum, we hold that defendant's duty of reasonable care, on which the jury was properly instructed, encompassed the risk that plaintiff would attempt to secure his load from atop his trailer bed because he was prohibited by defendant from doing so while standing on the ground on the driver's side of the trailer. There was ample evidence presented at trial to support the jury's finding that defendant breached this duty and that the breach was the proximate cause of plaintiff's injuries. The jury's verdict in favor of plaintiff was not against the manifest weight of the evidence.

■ In a somewhat related argument, defendant argues that it is entitled to a new trial because the trial court erred in allowing plaintiff's instruction No. 11—B to go to the jury. Plaintiff's instruction No. 11—B is plaintiff's issues instruction and provides, in pertinent part, as follows:

"The plaintiff claims that he was injured and sustained damage, and that the defendant was negligent in one or more of the following respects:

a. Negligently and carelessly failed to provide the plaintiff with a safe place to properly secure his load in that there were materials on or about the loading site and he could not secure his load from the ground.

b. Negligently and carelessly directed the plaintiff to park his truck in an area that would not allow him to properly secure his load."

Defendant objected to the instruction at trial and argues here, as he did there, that the instruction was improper because defendant owed plaintiff no duty to provide him with a loading site where he could secure his load from the ground. Defendant argues that it was not reasonably foreseeable to defendant that plaintiff would not discover the danger, or would fail to protect himself against it. We have already held that defendant's duty to exercise reasonable care toward plaintiff encompassed the risk that plaintiff would be injured while attempting to secure his load from atop his trailer and that defendant should have anticipated this risk and taken reasonable steps to protect plaintiff from it.

Defendant contends that plaintiff's instruction No. 11—B erroneously defines the standard of care to be applied. However, plaintiff's instruction No. 11—B is an issues instruction and does not address the standard of care. The jury was properly instructed that defendant owed plaintiff the duty to exercise ordinary care to keep the property reasonably safe for use by the plaintiff for his safety. Thus, the jury was properly instructed on the standard of care.

■ Nor do we find error in the giving of the issues instruction. The purpose of an issues instruction is to inform the jury of plaintiff's claims and defendant's response, and it is taken from the plaintiff's complaint and the defendant's answer. (*Jeffers v. Weinger* (1985), 132 Ill. App. 3d 877, 885, 477 N.E.2d 1270, 1276.) An issues instruction is proper provided it is succinctly stated without undue repetition or emphasis and is based on the evidence. (*Jeffers*, 132 Ill. App. 3d at 885, 477 N.E.2d at 1276.) The question as to what issues have been raised by the evidence is within the discretion of the trial court. (*Zueck v. City of Nokomis* (1987), 160 Ill. App. 3d 140, 145, 513 N.E.2d 125, 128.) The issues instruction given in the instant case was properly based on the plaintiff's complaint and the defendant's answer and was based on the evidence.

Defendant's next argument is that the trial court erred in granting plaintiff's motion *in limine* to exclude evidence of an out-of-court statement by an unidentified person to the effect that plaintiff may have had

a seizure immediately prior to his fall. During discovery, ambulance attendant Kevin Sipes had revealed that an unidentified person had told him at the scene of plaintiff's accident that it had appeared that plaintiff had had a seizure immediately prior to his fall. Defendant objected to the motion *in limine*; plaintiff argued that any such evidence would be inadmissible hearsay.

Defendant called Kevin Sipes to testify in offer of proof outside the presence of the jury. Sipes testified that an unidentified man was standing on top of plaintiff's trailer when Sipes arrived on the scene of the accident. This man stated that he had been riding with plaintiff because plaintiff was a student driver, and that plaintiff had had a seizure immediately before he fell off the trailer. Plaintiff did not tell Sipes that he had had a seizure, but did state that he was taking medication, which was in the cab of the truck. Sipes described the unidentified man as having dark brown hair and being heavy set. The court granted the motion *in limine*.

We point out that there is no other evidence in the record that plaintiff had anyone riding with him that day, and the evidence shows that plaintiff was not a student driver, but had over 30 years' experience as a truck driver. Furthermore, the evidence indicates that no one witnessed plaintiff's fall as plaintiff lay for several minutes calling for help before anyone responded.

■ The procedure for reviewing a trial court's grant of a motion *in limine* is set forth in *Department of Public Works & Buildings v. Roehrig* (1976), 45 Ill. App. 3d 189, 195-96, 359 N.E.2d 752, 759. In reviewing a circuit court's grant of a motion *in limine*, a reviewing court should first consider whether the trial court properly applied the rules of evidence. If it did not, the motion was improvidently granted. However, if the trial court did properly apply the rules of evidence, the reviewing court must then determine whether the trial court abused its discretion in granting the motion, or whether the trial court should have denied the motion and left to the moving party the procedure of objecting to the evidence when it was offered at trial. If the rules of evidence have been correctly applied, a trial court's grant of the motion will be reversed only if the trial court abused its discretion in granting the motion.

■ On appeal, defendant argues that it should have been able to present Kevin Sipes' testimony as to the out-of-court statement because, although it was hearsay, it was admissible under the spontaneous declaration exception to the hearsay rule. Three factors are necessary to bring a statement within the spontaneous declaration exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a sponta-

neous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (*Swartzberg v. Dresner* (1982), 107 Ill. App. 3d 318, 325, 437 N.E.2d 860, 866.) It is incumbent upon the party offering the declaration to establish that it meets the requirements of the exception. *Tarshes v. Lake Shore Harley Davidson* (1988), 171 Ill. App. 3d 143, 153, 524 N.E.2d 1136, 1143.

██ We think the instant case is remarkably similar to *Redmon v. Austin* (1989), 188 Ill. App. 3d 220, 225, 543 N.E.2d 1351, 1354. In that case we held that, where the out-of-court declarant is unidentified and unknown, there is simply no factual basis for determining that the exception is applicable. Here, as in *Redmon*, there was an occurrence which could have produced a spontaneous and unreflecting statement by someone who experienced or witnessed it, and the statement did relate to the circumstances of the accident. However, there is no way to know that the declarant actually did witness the occurrence. Furthermore, here, as in *Redmon*, the declaration was not made until sometime after the accident took place. Thus, the opportunity for fabrication was present. We think the trial court did properly determine that the out-of-court statement was hearsay and was not admissible under the spontaneous declaration exception to the hearsay rule.

Our analysis cannot stop here, for we must also determine whether the trial court abused its discretion in granting the motion *in limine*. We think not. Any reference before the jury to the out-of-court statement would have been highly prejudicial to plaintiff, especially where, as here, there is absolutely no evidence to corroborate the out-of-court statement and that statement is particularly untrustworthy. Indeed, as we have pointed out, certain elements of the out-of-court statement are directly contradicted by other evidence in the record. The trial court did not abuse its discretion in granting plaintiff's motion *in limine*.

Defendant next contends that it is entitled to a new trial because the trial court erred in discharging a juror from the venire after opening statements but before any evidence was presented. Juror James Tiemann had approached the trial judge after opening statement and stated that he had prejudged the case and that, based upon his experience with load binders and cheater bars and safety rules, he did not believe he could be fair to plaintiff. Tiemann did, however, state that he could conceivably have his mind changed.

Plaintiff immediately moved that the juror be discharged because he had prejudged the case even before the presentation of any evidence, appeared to be prejudiced against plaintiff, and was not fair and impartial. Defendant objected to discharging the juror and suggested that the

juror simply be instructed as to his obligation to keep an open mind. Defendant pointed out that it is not unusual for a juror to be persuaded by opening statement and that this juror had stated that he could have his mind changed based on the evidence.

Defense counsel was offered the opportunity to *voir dire* the juror and refused, stating that he felt precluded from any communication with a juror after the jury had been impaneled. The court stated that the juror had been quite adamant that he had prejudged the case and could not be fair to plaintiff. The court struck juror Tiemann and replaced him with an alternate. Defendant then moved for a mistrial. This motion was denied.

■■■ The general principle is that discharge of a juror is a matter of discretion with the trial judge, and prejudice must be shown in order to warrant reversal. (*Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 105, 463 N.E.2d 792, 810.) As to the test of discretion, a trial court must have some legitimate reason for discharge in order to avoid the appearance of being arbitrary in the face of objection. *Lowe*, 124 Ill. App. 3d at 105-06, 463 N.E.2d at 810.

■■■ In the instant case, we do not think that the trial court abused its discretion in discharging juror Tiemann. The court had a legitimate reason for discharging Tiemann and certainly that decision was not made arbitrarily. Nor do we think defendant has shown any prejudice as a result of the discharge. An alternate juror was available and juror Tiemann was discharged and replaced with one of these alternate jurors prior to the presentation of any evidence. The alternate juror had, presumably, heard the opening statements. Indeed, the only prejudice defendant can claim is that juror Tiemann was prejudiced in favor of defendant. Certainly, this is not sufficient to warrant reversal.

The final argument made by defendant on appeal is that the damages awarded to plaintiff, Shirley Flath, should have been reduced by the amount of her husband's comparative negligence. At trial, defendant objected to plaintiff's instruction No. 23, the damages instruction for plaintiff, Shirley Flath, for the reason that it did not allow for reduction of her award in accordance with the comparative negligence, if any, of her husband. The trial court denied the objection and gave the instruction as tendered.

In February 1989, the First District of the Appellate Court held in *Erickson v. Muskin Corp.* (1989), 180 Ill. App. 3d 117, 129-31, 535 N.E.2d 475, 482-83, that recent decisions of the supreme court indicated that consortium claims are no longer considered to be derivative of the injured spouse's personal injury action, but are independent actions, personal to the claimant. *Erickson* held, therefore, that the injured spouse's

comparative negligence should not be imputed to the spouse's loss of consortium claim.

However, in *Blagg v. Illinois F.W.D. Truck & Equipment Co.* (1989), 186 Ill. App. 3d 955, 965, 542 N.E.2d 1294, 1301, decided in August 1989, some months after *Erickson*, the Second District of the Appellate Court held that the *Erickson* court's analysis and interpretation of the recent supreme court decisions was flawed. While the *Blagg* court recognized that the recent supreme court decisions clearly established that a consortium claim is an independent claim insofar as it is not a claim by the spouse as a representative of the injured spouse, they just as certainly did not answer the question of whether a consortium award should be reduced by the injured spouse's negligence. The second district found that the most persuasive authority on that question was the past law in Illinois regarding loss of consortium under contributory negligence.

Prior to the introduction of comparative negligence in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, the law clearly considered the negligence of the injured spouse in determining whether a spouse had a claim for loss of consortium. Thus, under comparative negligence, the injured spouse's negligence should not be considered irrelevant to the amount of a spouse's recovery for loss of consortium. *Blagg* held:

> "It only follows that a consortium claim must also be reduced by the proportion of the injured spouse's negligence since the spouse's loss of consortium was in part caused by this negligence. *** If the spouse asserting consortium is allowed to recover from defendant without reduction of the physically injured spouse's negligence, then defendant is forced to compensate one spouse for the other spouse's negligence." (186 Ill. App. 3d at 966, 542 N.E.2d at 1301-02.)

Finally, *Blagg* pointed out that the majority of other States which had addressed this issue did apply the injured spouse's negligence against a loss of consortium claim.

In March 1990, our supreme court overruled the first district's decision in *Erickson* and affirmed the decision of the Second District of the Appellate Court in *Blagg*. (*Blagg v. Illinois F.W.D. Truck & Equipment Co.* (1990), 143 Ill. 2d 188.) The Illinois Supreme Court held that recovery for loss of consortium is limited by the physically injured spouse's negligence. Accordingly, we hold that the trial court erred in overruling defendant's objection to plaintiff's instruction No. 23 and giving the instruction as tendered. The instruction should have provided for a reduction of damages in accordance with the degree of negligence, if any, of the injured spouse.

Exercising the power granted to us by Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), we hereby modify the judgment of the circuit court of St. Clair County by reducing the damages awarded to Shirley Flath by 20%, the amount of her husband's negligence as found by the jury. The judgment is hereby modified to award plaintiff Shirley Flath damages in the amount of $16,000.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is hereby affirmed as modified.

Affirmed as modified.

RARICK, P.J., and GOLDENHERSH, J., concur.