598

659 A.2d 1313

STATE of Maryland

v.

Harold Thomas COOK.

No. 110, Sept. Term, 1994.

Court of Appeals of Maryland.

June 22, 1995.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Gary E. Bair, Asst. Atty. Gen., Rachel Marblestone Kamins, Staff Atty., all on brief), Baltimore, for petitioner.

Victor J. D'Avella, Bel Air, for respondent.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and JOHN F. McAULIFFE, Judge (Retired and Specially Assigned).

CHASANOW, Judge.

In the present case, we are asked to review a trial judge's decision in a criminal trial to remove a seated juror and replace him with an alternate juror pursuant to Maryland Rule 4–312. We hold that the defendant is not entitled to a new trial by virtue of the juror replacement.

## I.

This case stems from the 1993 conviction in the Circuit Court for Harford County of Harold Thomas Cook on charges of sexually abusing his stepdaughter from the summer of 1974 until December, 1977.[1] At trial, the victim testified that the abuse began on a family vacation in Ocean City and continued until she reported the abuse to an aunt in 1982. Cook's stepdaughter testified at trial as to the nature of the abuse. She stated that Cook showed her pornographic movies, fondled her breasts and genitals, performed cunnilingus, and tried to force the victim to perform fellatio. The victim testified that the abuse occurred on a nightly basis:

---

1. The original indictment also included allegations of sexual abuse of the victim's younger sister. These charges were nolle prossed.

"I know to me it was just every night. It was for sure every time that my Mom was away, my Mom was at work, he was in my room. And it went on—there were times that my Mom would be in bed and he would come in."

The victim further testified that her bedroom was right next to her parents' bedroom. She stated that she did not inform her mother of the abuse because Cook told her that her mother was ill and if her mother was told, she would "end up being put in a ... mental institution."

The State rested its case against Cook on July 14, 1993 and the defense case began the following day. A recess was taken shortly after proceedings began on July 15th. At that time, the trial judge (Carr, J.) held a meeting in chambers and shared with counsel the contents of a note sent to the judge by juror number six. The note read:

"Your Onor [sic],

[The victim] stated her stepfather came into her bedroom every night. The mother & stepfather's bedroom right next door. The mother was home in bed some times before he got home from work. If he left there [sic] bedroom and went into the step-daughter[']s bedroom did the mother know it?

Why not right next door?

'If so!' What for?

If the daughter was raped every night, was the mother having sex with him? How often? Working a full time job and 2 nights on a part time job. 'Had to be a good man!' Strike that! Remark." (Emphasis in original).

The State moved to have the juror stricken, arguing that the note indicated that the juror had "made up his mind at this point. He is ... not considering the remainder of the evidence." The defense argued that the note did not necessarily indicate that the juror had come to any conclusion or had violated the court's instructions about not forming an opinion prior to deliberations. Defense counsel argued that:

"[F]irst of all I don't know that this man writing this note in and of itself constitutes any sort of impropriety. It constitutes something rather unusual.

*    *    *    *    *    *

He has in quotes 'had to be a good man' end quotes. As I think the Court can take judicial notice that that remark immediately follows a description of what his view of the testimony is, which is having sexual relations every night with one, perhaps two females. And I think that's what 'had to be a good man' means and doesn't mean anything concerning guilt or innocence. *He may mean that he thinks that he is guilty.*" (Emphasis added).

The trial judge did not dismiss the juror at that time, but noted:

"It seems to me he is doing something I have never seen before and that is midway through the case giving us a status report of what his opinion is of what has happened before, which is highly unusual. However, we are not at the end of the case yet and let me think about this and do a little research on this.

Certainly I'm going to take this into consideration. If I choose to dismiss, I can do it at the end of the case.... Let's give it some thought and get some cases on point and we will take it from there."

The court considered the issue again at the close of all of the evidence. At this point, the trial judge questioned the juror and permitted counsel to question the juror regarding the meaning of his note:

"COURT: You sent me a note this morning. I was wondering why you did that?

JUROR: I feel we had gotten part of the evidence from the daughter, her statement and it was not followed up to the mother right there in the household.

COURT: Why did you send me a note?

JUROR: That is what the bailiff told me to do.

*    *    *    *    *    *

COURT: Only if you had questions that you wanted to ask questions of the witness, is that right?

JUROR: That's right.

COURT: The witnesses were gone. This note came to me this morning. That witness finished testifying yesterday.

JUROR: I didn't understand that they were dismissed of the hearing either.

COURT: Well, they finished testifying and other people testified, didn't they, after they finished? I don't understand your remark. What was the purpose of that remark in the second paragraph? They aren't questions; they are comments aren't they?

JUROR: It's not meant as a comment.... I didn't mean it to be but it is, but what was really on my mind, I could not see, I mean, I'm a parent also, what went on in the household really; the daughter answered the questions that she was asked about the household, different things but it was not followed up with the same thing with the mother so that the mother could answer them. With them being in the next room with one partition between them, that's what I couldn't understand.

*     *     *     *     *     *

STATE: You made a statement in there that he is a good man or you're a good man, do you remember that is one of the last things that you said, sir; and it's underlined.

*     *     *     *     *     *

STATE: What was that intended for?

*     *     *     *     *     *

JUROR: It wasn't any definite remark or like a remark about that. What it was, the man had to be in good health to be in this kind of shape, well-being, in good shape to be in that kind of health. If a man is going to have sex with his daughter or adopted daughter, he has got to be in good shape to provide his wife with what she needs too.

One time when I got married I put myself in the same category. My wife couldn't have children for 5 and a half years. For sixty days I had to be with my wife every night. It was mighty hard and I lost weight and everything else on account of it, and I was a young man. And it takes a strong adult and a good man to continue on, because he is going to drop in health; his weight. I meant it because of my circumstances that I was involved in."

After questioning the juror, the State again moved to have the juror stricken. The defense argued that the note reflected the juror's desire to hear from a witness again and that the comment that the defendant "had to be a good man" simply reflected that the juror was relating his own experiences to the facts of the case. The court decided to dismiss the juror, noting:

"I'm very concerned about the last paragraph which I think is a gratuitous evaluation of certain portions of the evidence that were presented at that time in this case. There's a serious question in my mind whether this particular juror has followed the instructions that he was given . . . specifically keep an open mind throughout the entire case.

\*     \*     \*     \*     \*     \*

Just the overall tenor about the way he handled these particular aspects of this case and I don't think it's in anyone's best interest to have someone on the jury, and this includes the Defendant's best interest, who isn't listening to what he is being told."

The court then replaced juror number six with an alternate juror and jury instructions and closing argument were given. Following four hours of deliberations, the jury found Cook guilty on all counts.

Prior to sentencing on September 15, 1993, a hearing was held on a motion for a new trial filed by Cook based on alleged error in dismissing the juror. Defense counsel again argued that the juror's note indicated only that the juror had questions about the evidence and that he was relating the evidence

to his own experiences. Defense argued that Cook had a right to be tried by the particular jurors selected to try him and that the removal of juror number six was not harmless error. The State argued that the removal of the juror was discretionary and that the juror's explanation for his note was not logical. The court denied the motion for a new trial noting:

"I'll say now, if I didn't say it at that time, that I found [the juror's] explanation [for the comments in his note] somewhat dubious; I guess is the best word.

I base that opinion not only on the words that he used, but also by the way he gave his explanation. He was, to me, somewhat at first hesitant and then came across with an explanation for the reasons ... for his editorial comment in a way that there was more to his answer than what he told us, and I gave it very little credibility.

\* \* \* \* \* \*

If a juror sends out [a note] with an editorial comment and then doesn't have a candid ... rationale or ... rational explanation for what he does; I doubt whether that juror is capable of providing either side with a fair evaluation of what is going on in the case.

And so that is the reason that I struck him."

Cook appealed to the Court of Special Appeals, which reversed and held that the removal of juror number six was both improper and prejudicial. *Cook v. State,* 100 Md.App. 616, 628–29, 642 A.2d 290, 296 (1994). The intermediate appellate court interpreted the removal of juror number six as a removal for cause under Md.Rule 4–312(e) and found that when a removal for cause is requested, a trial court's discretion is more limited than when the removal is due to the juror's inability to continue, as set forth in Md.Rule 4–312(b)(3), because "a criminal defendant is entitled to have his case heard to completion by the chosen jury the defendant believes may decide in his favor." *Cook,* 100 Md.App. at 626, 642 A.2d at 295. The court held that a trial judge "may strike a juror for cause ' "only where he or she displays a predisposition against innocence or guilt because of some bias extrinsic

to the evidence to be presented." ' " *Cook,* 100 Md.App. at 626–27, 642 A.2d at 295 (quoting *Stokes v. State,* 72 Md.App. 673, 677, 532 A.2d 189, 191 (1987), in turn quoting *McCree v. State,* 33 Md.App. 82, 98, 363 A.2d 647, 657 (1976)).

Applying this standard to the instant case, the Court of Special Appeals found that the juror gave an adequate explanation for the content of his note and the note did not reflect a failure to follow the court's instructions. *Cook,* 100 Md.App. at 627–28, 642 A.2d at 295–96. The intermediate appellate court also held that the trial court's interpretation of the statement "had to be a good man" was incorrect and the comment did not reflect any predisposition on the part of the juror. *Cook,* 100 Md.App. at 628, 642 A.2d at 296. The court held that the error in removing the juror was not harmless because "the accused maintains a substantial right to have his case decided by the particular jurors selected to try him." *Id.* We granted certiorari to review the trial judge's decision to dismiss the seated juror.

## II.

Cook relies on the Court of Special Appeals's characterization of the issues in the instant case. He argues that he has a "valued right to have his trial completed by a particular tribunal" and that the juror should not have been removed when there was "no direct evidence of any bias or predisposition." Cook further asserts that the State requested that the juror be removed and therefore, the removal of the juror was properly analyzed by the Court of Special Appeals as a challenge for cause by the State under Md.Rule 4–312(e). Under Md.Rule 4–312(e), Cook argues, the court's discretion in removing a juror is more limited than a removal under Md.Rule 4–312(b)(3).

The State, on the other hand, argues that the removal of the juror in the instant case is purely discretionary and should be analyzed under Md.Rule 4–312(b)(3)'s provision for the replacement of jurors. It argues that the trial judge found the juror to be "incapable of following the court's instructions to

keep an open mind" and that no showing of good cause was required for the judge to remove the juror on this basis.

Md.Rule 4–312(b)(3) provides in pertinent part:

"*Non–Capital Cases.*—[T]he court may direct that one or more jurors be called and impanelled to sit as alternate jurors. Any juror who, before the time the jury retires to consider its verdict, becomes or is found to be unable or disqualified to perform a juror's duty, shall be replaced by an alternate juror in the order of selection."

Md.Rule 4–312(e) provides:

"(e) **Challenges for Cause.**—A party may challenge an individual juror for cause. A challenge for cause shall be made and determined before the jury is sworn, or thereafter for good cause shown."

In the instant case, we need not determine whether the removal of juror number six must be analyzed on appellate review under Md.Rule 4–312(b)(3) or 4–312(e) because we find that under either rule the judge's removal of the juror does not warrant a new trial. We note that under Md.Rule 4–312(e), the requirement of "good cause shown" refers to the justification for a party making the challenge for cause after the jury is sworn and does not refer to the standard which must be applied by an appellate court in reviewing a trial judge's determination to remove a juror. As will be discussed, *infra,* we hold that when a judge determines to remove a juror and substitute an alternate juror for a reason particular to that juror, whether the juror is removed based on the trial judge's determination of the juror's unavailability or disqualification or based on the judge's determination of some other cause for the removal of the juror, the trial judge's decision is a discretionary one and will not be reversed on appeal absent a clear abuse of discretion or a showing of prejudice to the defendant.

This Court has previously reviewed a trial court's decision to remove a juror for a reason particular to that juror, albeit in the context of jury selection. *See Hunt v. State,* 321 Md. 387, 583 A.2d 218 (1990), *cert. denied,* 502 U.S. 835, 112 S.Ct.

117, 116 L.Ed.2d 86 (1991); *King v. State,* 287 Md. 530, 414 A.2d 909 (1980). In *King,* we considered the assertions of two criminal defendants that the trial court erred by excluding from the panel of jurors two people who stated that they felt the laws concerning marijuana, under which the defendants were charged, should be changed. We held that the dismissal of the potential jurors was improper, noting that:

"[T]he mere statement by a juror of his belief that the criminal law concerning marijuana ought to be modified, without more, does not indicate that the juror is biased, prejudiced or unqualified to be a juror in a prosecution for possession and distribution of marijuana. Many people may personally believe that a particular law is undesirable or should be changed, yet the existence of such a belief does not necessarily mean that the holder would refuse or be unable to apply the existing law to the facts of the case."

*King,* 287 Md. at 535–36, 414 A.2d at 912. The State argued that the removal of the jurors was not reversible error because the jury ultimately seated was unobjectionable. *King,* 287 Md. at 537–38, 414 A.2d at 913. We rejected this argument, stating *"[a]lthough this principle may be applicable in cases where the reason for excusing a juror is related to that particular juror,* it is inapplicable when an entire class holding a certain belief is excluded." *King,* 287 Md. at 538, 414 A.2d at 913 (emphasis added).

Similarly, in *Hunt,* we considered the trial court's removal of a prospective juror who was the cousin of the attorney who had previously represented the defendant. In affirming the trial court's dismissal of the potential juror, we noted that, "excusing jurors for cause because of their abstract beliefs is an abuse of discretion." *Hunt,* 321 Md. at 419, 583 A.2d at 233. We pointed out that the prospective juror was not dismissed for abstract beliefs, but rather for his personal relationship with someone who had strong interests in the case. *Hunt,* 321 Md. at 419, 583 A.2d at 234. We held that, even had there been insufficient cause to excuse the potential juror, this would not constitute reversible error if the jurors actually seated were unobjectionable. *Hunt,* 321 Md. at 420,

583 A.2d at 234. We found that *"[t]his principle is applicable where, as here, the reason for excusing a juror is related to the particular juror and not to a general class of people." Id.* (emphasis added) (citing *King,* 287 Md. at 538, 414 A.2d at 913).

The distinction made in *Hunt* and *King* is significant in considering the remedy available if an appellate court finds that jurors have been improperly excluded. When an appellate court grants a new trial based on the trial court's exclusion of a class of jurors, upon retrial the jury will represent a fair cross-section of the community and the new jury may contain members of the originally excluded class. The resulting jury will therefore, at least theoretically, be fairer than that which existed as a result of the improper exclusion of the class of jurors. In contrast, where an individual juror is improperly dismissed for reasons particular to that juror, the dismissed juror will not serve on a new jury if retrial is granted, and a new jury will be no fairer than the jury which originally decided the case. A litigant who argues on appeal that he or she did not receive a fair trial without the excused juror and seeks a new trial will have exactly what he or she got in the first trial—a jury which will not contain the juror excused from the original trial and is unlikely to contain any jurors similar to the juror excused from the original jury. In the instant case, were Cook to prevail in his appeal, he would be granted a new trial with a jury that would again not contain the excluded juror, nor would it contain any juror with characteristics similar to that which caused the exclusion of the original juror. As there is no evidence that the alternate juror who replaced the excluded juror was partial or biased, the fair and impartial jury Cook would get on retrial is exactly what he got after juror number six was excused from the original trial. Because the "remedy" for the exclusion of a juror for a reason particular to that juror results in a new trial with a jury composed in the same manner as that in the original trial, there is no reason to reverse a trial judge who excludes an individual juror unless the removal of the juror constitutes a clear abuse of discretion on the part of the trial

judge or the defendant can demonstrate that he or she suffered some prejudice. Absent such abuse or prejudice, the new jury on retrial will not be any fairer to the defendant than the jury which resulted after the dismissal of the original juror and the replacement of that juror with an alternate.

■ This point was illustrated in our decision in *Bluthenthal & Bickart v. May Co.,* 127 Md. 277, 96 A. 434 (1915). In *Bluthenthal,* this Court considered the defendant's objection to the removal and substitution of the jury foreman after the plaintiff's counsel noticed the foreman nod to defense counsel upon being seated as foreman. In noting that the defendant was not injured by the removal and substitution of the juror, the Court stated:

"The authorities support the proposition that it is not reversible error for the Court of its own motion to exclude a juror, even for insufficient cause, if an unobjectionable jury is afterwards obtained. In *Pittsburgh, etc., Ry. Co. v. Montgomery,* 152 Ind. 1, [49 N.E. 582,] in discussing an objection such as that now under consideration, the Court said: 'It is complained under the motion for a new trial that the Circuit Court erred in excusing on its own motion the juror ..., who it is alleged was a competent juror, over appellant's objection. But it is not shown that the jury which was finally impaneled was not a fair and impartial jury. In such a case, the matter is very much in the discretion of the trial Court, and no error is committed where no injury results from the Court's action in excusing the juror.' "

*Bluthenthal,* 127 Md. at 285–86, 96 A. at 438. *See also Myers v. State,* 58 Md.App. 211, 234–35, 472 A.2d 1027, 1039 (citing the above passage from *Bluthenthal* ), *cert. denied,* 300 Md. 484, 479 A.2d 373 (1984); *Campbell v. State,* 500 N.E.2d 174, 181 (Ind.1986) (finding that replacement of juror with alternate did not deprive defendant of his right to trial by an impartial jury). We note in the instant case that Cook has presented no evidence and we have found no evidence that the jury, which resulted after juror number six was dismissed, was

partial or biased in any way or that Cook was prejudiced in any way. We therefore see no reason to reverse the discretionary decision made by the trial judge to dismiss juror number six.

The Court of Special Appeals has previously addressed the issue of removal of a seated juror under Md.Rule 4–312 and has found that the judge's determination is a discretionary one which will not be disturbed absent an abuse of discretion. In *James v. State*, 14 Md.App. 689, 288 A.2d 644 (1972), the Court of Special Appeals considered the propriety of the removal of a seated juror under a predecessor to Md.Rule 4–312(b)(3), which provided that alternate jurors shall replace jurors who, prior to the time for retiring to consider a verdict, become unable or disqualified to perform their duties. In *James*, a seated juror in a murder trial had failed to respond affirmatively in voir dire that she had previously served as a juror in a criminal case. This was brought to the attention of the Assistant State's Attorney, who informed the trial judge and suggested that the juror be removed "for cause." The trial judge replaced the juror with an alternate and denied the defendant's motion for a mistrial. Despite the request for the removal of the juror "for cause," the Court of Special Appeals cited former Rule 748, a predecessor to Md.Rule 4–312(b)(3), and noted that:

> "It is pellucid that Maryland's supernumerary juror rule provides for a substitution or replacement of regular jurors by alternates up to the juncture occurring when the jury retires to deliberate its verdict.
>
> *       *       *       *       *       *
>
> Our rule does not define the circumstances under which a juror shall 'become unable or disqualified' to perform his duties and each case must stand on its own facts. Though the directive of the Maryland rule,—'shall replace jurors'— is couched in mandatory terms, it is obvious that the word 'shall' as used therein is directory. *Thus, the substitution vel non of a supernumerary for a regular juror lies within the sound discretion of the trial judge. Such an exercise of*

*discretion will not be disturbed on appeal unless arbitrary and abusive in its application."* (Emphasis added).

*James,* 14 Md.App. at 699, 288 A.2d at 650. *See also Tisdale v. State,* 41 Md.App. 149, 156, 396 A.2d 289, 294 (1979).[2]

Thus, it is clear from *James* that the Court of Special Appeals has found that a trial judge's determination to excuse a seated juror is a decision that will not be reversed unless "arbitrary and abusive." 14 Md.App. at 699, 288 A.2d at 650. Despite this acknowledgement in at least one previous Court of Special Appeals opinion, in the instant case, the Court of Special Appeals held that the trial judge has more limited discretion in determining whether to remove the juror because the removal should be considered one for cause under Md. Rule 4–312(e). *Cook,* 100 Md.App. at 626, 642 A.2d at 295. In so holding, the Court of Special Appeals relied on its decision in *Tisdale, supra,* in which it stated in dicta that "where the issue is disqualification of a juror for cause, the court's discretion is necessarily more limited than where the issue is the juror's ability to continue." 41 Md.App. at 156, 396 A.2d at 293. This is true, the intermediate appellate court reasoned, "because a criminal defendant is entitled to have his case heard to completion by the chosen jury the defendant believes may decide in his favor." *Cook,* 100 Md.App. at 626, 642 A.2d at 295 (citing *Stokes,* 72 Md.App. at 676, 532 A.2d at 190). By drawing on its prior reasoning in *Stokes,* the Court of Special Appeals appeared to make an analogy to double jeopardy principles to hold in the instant case that the removal of the seated juror was prejudicial to Cook. We find the double jeopardy principles relied on by the Court of Special Appeals in *Stokes* to be inapplicable where, as here, the entire jury is not discharged, but rather, a seated juror is removed after a

---

**2.** *See also Miles v. State,* 88 Md.App. 360, 594 A.2d 1208, *cert. denied,* 325 Md. 94, 599 A.2d 447 (1991), in which the Court of Special Appeals, reviewing the *denial* of a request to remove a juror, noted that "the decision to excuse a juror and to seek an alternate in his or her place is within the sound discretion of the trial court." 88 Md.App. at 373, 594 A.2d at 1214.

finding that the juror is unable to follow the court's instructions and is replaced with an alternate juror.

In *Stokes*, which the Court of Special Appeals relied on in the instant case, the trial judge *sua sponte* removed a seated juror after noting that he witnessed the juror exchanging smiles with the defendant and sleeping at times during the trial. The juror was not questioned by the judge or counsel before removal and was replaced with an alternate. The Court of Special Appeals reversed the judgment against the defendant and remanded the case for a new trial, finding that the trial judge had failed to establish "on the record good cause for such extraordinary action." *Stokes*, 72 Md.App. at 684, 532 A.2d at 194. In so holding, the court emphasized that "[w]e have heretofore recognized, *in a somewhat different context*, that a defendant has a ' "valued right to have his trial completed by a particular tribunal." ' " *Stokes*, 72 Md.App. at 676, 532 A.2d at 190 (quoting *Tabbs v. State*, 43 Md.App. 20, 22, 403 A.2d 796, 798 (1979), in turn quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949)) (emphasis added). Therefore, the *Stokes* court found, the removal of a juror must be "clearly warranted." 72 Md.App. at 676, 532 A.2d at 190.

The notion that a defendant has a "valued right to have his trial completed by a particular tribunal," applied in *Stokes*, was borrowed from the Supreme Court's opinion in *Wade v. Hunter, supra*. In *Wade*, the Supreme Court considered a habeas corpus petition from a soldier who argued that he had twice been put in jeopardy by undergoing a second court-martial proceeding after the first proceeding was abandoned by one unit of the army due to the unavailability of key witnesses and due to tactical circumstances brought about by the movement of the unit involved in the original court martial proceeding. The Court found that the prisoner had not been placed twice in jeopardy because there was a manifest necessity for abandoning the first court-martial. *Wade*, 336 U.S. at 691–92, 69 S.Ct. at 838–39, 93 L.Ed. at 979–80. In so holding, the Court noted that "a defendant's valued right to have his trial completed by a particular tribunal must in some instances

**614**

be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade*, 336 U.S. at 689, 69 S.Ct. at 837, 93 L.Ed. at 978. *See also United States v. Jorn*, 400 U.S. 470, 480, 91 S.Ct. 547, 554–55, 27 L.Ed.2d 543, 554 (1971). This statement, borrowed by the Court of Special Appeals in *Stokes*, was made in reference to the dismissal of an entire jury and was not applied to the dismissal of one juror and replacement by an alternate.[3] Similarly, in *Tabbs, supra*, also relied on by the Court of Special Appeals in *Stokes, supra*, the issue was whether double jeopardy barred retrial where the defendant had moved for and been granted a mistrial after a State's witness blurted out information damaging to the defendant during cross-examination. A defendant's "valued right to have his trial completed by a particular tribunal" was assessed in light of the discharge of the entire jury due to a mistrial.

We do not agree with the *Stokes* court's apparent comparison of double jeopardy principles to circumstances such as that in the instant case. A defendant's "valued right to have his trial completed by a particular tribunal" should not be expanded to apply to a situation where a seated juror is replaced with an alternate who has undergone the same selection process as the seated jurors and has been present for the entire trial. *See People v. Johnson*, 200 Cal.App.3d 1553, 247 Cal.Rptr. 767, 773 (1988) (holding that substitution of an alternate juror did not place the defendant twice in jeopardy "because the unity of the original jury was not destroyed"). *See generally*, W.J. Dunn, Annotation, *Constitutionality and Construction of Statute or Court Rule Relating to Alternate or Additional Jurors or Substitution of Jurors During Trial*, 84 A.L.R.2d 1288, 1292–94 (1962) (discussing cases rejecting double jeopardy challenge to removal of seated juror with alternate). Thus, while Cook has a right to a fair and impartial jury, Cook does not have a right to a jury composed of particular individuals. *See State v. Davis*, 137 Ariz. 551, 672

---

3. We note, however, that even these cases recognize that the defendant's "valued right to have his trial completed by a particular tribunal" is not absolute.

P.2d 480, 487 (Ct.App.1983) (accused is not entitled to be tried by any one particular jury); *State v. Milardo*, 6 Conn.Cir.Ct. 430, 274 A.2d 890, 896 (1970), *cert. denied*, 160 Conn. 582, 272 A.2d 140 (1971).

We therefore hold that where, as here, a judge excludes a juror on grounds which are particular to the juror, rather than on characteristics which the juror may hold in common with a particular class of persons, we will give deference to the trial judge's determination and will not substitute our judgment for that of the trial judge unless the decision is arbitrary and abusive or results in prejudice to the defendant. The reason for such deference is based not only on the fact that the "remedy" for the exclusion of such a juror results in a jury no fairer than that which originally decided the case, but is also based on the fact that in evaluating the excluded juror, the trial judge has the opportunity to question the juror and observe his or her demeanor. As we noted in the context of the judge's discretion in declaring a mistrial, "[t]he judge is physically on the scene, able to observe matters not usually reflected in a cold record.... [T]he judge has his finger on the pulse of the trial." *State v. Hawkins*, 326 Md. 270, 278, 604 A.2d 489, 493 (1992). *See also Buck v. Cam's Rugs*, 328 Md. 51, 59, 612 A.2d 1294, 1298 (1992) (noting that a trial judge's discretion in granting a mistrial is broad where "the exercise of discretion ... depends so heavily upon the unique opportunity the trial judge has to closely observe the entire trial, complete with nuances, inflections, and impressions never to be gained from a cold record"). We find that the rationale for providing such deference in a trial judge's determination to exclude a *potential* juror or in deferring to a trial judge's decision regarding a motion for mistrial is equally present in evaluating a trial judge's decision to excuse a *seated* juror.[4] Where there is enough support to find that the trial

---

4. In *Educational Books, Inc. v. Com.*, 3 Va.App. 384, 349 S.E.2d 903 (1986), the Court of Appeals of Virginia applied this rationale in the context of a trial judge's determinations regarding the disqualification of a seated juror. The court stated:

judge's determination to remove a juror was not arbitrary, we should give deference to the trial court's decision. *See, e.g., State v. Hopkins,* 27 Ohio App.3d 196, 27 OBR 235, 500 N.E.2d 323, 325, 326 (1985) (holding that to remove and replace a juror, there need not be a finding of manifest necessity, but rather that "the better approach is that absent an abuse of discretion, the trial court's decision to replace a juror will be upheld as an exercise of that court's discretion" and that "[a]bsent a record showing that the court abused that discretion, we presume regularity").

In the instant case, the trial judge questioned juror number six regarding the meaning of the comments in his note. The trial judge, having the opportunity to observe the juror's demeanor in answering the questions posed to him, found that the explanations provided by the juror were "dubious" and that there was reason to believe that the juror was not following the judge's instructions regarding forming an opinion prior to hearing all of the evidence. The trial judge did not exclude the juror because of a tentative opinion the juror may have formed based on the evidence that had already been presented, but rather, based on the fact that the juror's failure to follow the judge's instructions indicated that the juror could not properly carry out his function as a juror. The exclusion of a juror for a bias he or she may have formed based on the evidence already presented in the underlying case might be a prejudicial abuse of discretion on the part of the trial judge. In the instant case, however, the record reflects that the trial judge excluded the juror not because he

---

"[W]e do not disregard the maxim that, when making determinations as to the qualifications of jurors, the trial judge is vested with great discretion. Because of the trial judge's presence at the trial, the trial judge is in a unique position to observe the demeanor of the challenged juror and to evaluate all aspects of her testimony."
*Educational Books,* 349 S.E.2d at 908. *See also Skinner v. State,* 575 A.2d 1108, 1120 (Del.1990), in which the Supreme Court of Delaware noted that "[t]he determination of a juror's impartiality is the responsibility of the trial judge who has the opportunity to question the juror, observe his or her demeanor and evaluate the ability of the juror to render a fair verdict."

had an apparent bias as to guilt or innocence of the defendant, but because the trial judge concluded that the juror could not follow the court's instructions. We hold that the record provides adequate support for the trial judge's determination to excuse the juror, and we will not, based on the cold record provided us, substitute our judgment for that of the trial judge.[5] The decision on whether to replace a juror with an alternate juror should not be reversed absent an abuse of discretion, or prejudice to the defendant.

Numerous jurisdictions, both federal and state, have followed the rule we apply today and have held that the replacement of a seated juror with an alternate is a discretionary determination of the trial judge which will not be reversed absent a clear abuse of discretion or a showing of prejudice. In *United States v. Cameron*, 464 F.2d 333, 335 (3d Cir.1972), the United States Court of Appeals for the Third Circuit analyzed the propriety of the removal of a juror who appeared to be sleeping during the trial and who greeted a key defense witness during a recess. The court reviewed federal cases in which jurors were removed for a variety of reasons and found that "[a]lthough the factual situations differ, the common thread of the cases is that the trial judge, in his ' sound discretion, may remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired." *Cameron*, 464 F.2d at 335. *See also United States v. Smith*, 550 F.2d 277, 285 (5th Cir.) ("the trial court's exercise of this discretion [in removing a seated juror] is not to be disturbed absent a showing of bias or prejudice to the defendant"), *cert. denied*, 434 U.S. 841, 98 S.Ct. 138, 54

---

5. The Court of Special Appeals stated that lack of good cause for the removal of the juror is evidenced by the fact that the trial judge failed to ask the juror whether he could reach a fair and impartial verdict. *Cook v. State*, 100 Md.App. 616, 628, 642 A.2d 290, 296 (1994). Having already found the juror's answers to the court's inquiries "dubious," we do not feel that it was necessary for the judge to pose such a question only to be given another "dubious" answer. In dismissing the juror, the trial judge clearly found that the juror could not reach a fair and impartial verdict. We will give deference to such a finding.

L.Ed.2d 105 (1977); *United States v. Boyd,* 767 F.Supp. 905, 907 (N.D.Ill.1991) ("[a] decision to replace a juror with an alternate is subject to an ' "abuse of discretion" ' review standard, and will not be overturned ' "if the record shows *some legitimate basis* for [the] decision" ' ") (quoting *United States v. Doerr,* 886 F.2d 944, 970-71 (7th Cir.1989), in turn quoting *United States v. Peters,* 617 F.2d 503, 505 (7th Cir.1980)) (emphasis added in *Doerr*).

In *United States v. Fajardo,* 787 F.2d 1523 (11th Cir.1986), the United States Court of Appeals for the Eleventh Circuit summarized the principles applied by federal courts regarding the removal of a seated juror. The court stated:

"The decision to remove a juror and replace him with an alternate is entrusted to the sound discretion of the trial judge 'whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired.' The trial court's discretion in removing a juror 'is not to be disturbed absent a showing of bias or prejudice to the defendant ... or to any other party.' In these instances 'prejudice' includes discharge of a juror 'without factual support, or for a legally irrelevant reason.' " (Citations omitted).

*Fajardo,* 787 F.2d at 1525. In reviewing the removal of a juror who experienced severe sinus problems and disturbed other jurors, the court noted that "[o]ur review is limited to an antiseptic record and is ordinarily an inferior substitute for the first-hand observations of the trial court." *Fajardo,* 787 F.2d at 1525–26. The court further stated that "[t]he trial judge does not need a defendant's consent to replace a juror with an alternate before the jury retires; all that is required is a reasonable cause for the replacement." *Fajardo,* 787 F.2d at 1526. *See also* Robert A. Morse, Annotation, *Substitution, Under Rule 24(c) of Federal Rules of Criminal Procedure, of Alternate Juror for Regular Juror Before Jury Retires to Consider Verdict in Federal Criminal Case,* 115 A.L.R.Fed. 381, 393 (1993) (discussing federal cases in which juror is replaced with alternate and noting that "the decision to substitute an alternate juror is discretionary"); 2 Robert S. Hunter,

*Federal Trial Handbook* § 17.5, at 297 (3d ed. 1993) ("[t]he decision to remove a juror under [the federal] rules is committed to the sound discretion of the trial judge").

Several state courts have also held that the decision to remove a seated juror will not be reversed absent a clear abuse of discretion or prejudice. In *People v. Johnson,* 757. P.2d 1098 (Colo.Ct.App.1988), the Colorado Court of Appeals addressed a contention by a criminal defendant that he had been denied his right to a fair and impartial jury by the removal of a seated juror. During the trial, the juror had expressed aggravation with the length of the trial, had made negative comments regarding court personnel, and had discussed commencing deliberations before the end of the State's case. In upholding the juror's dismissal, the *Johnson* court noted that a seated juror may be replaced with an alternate when the seated juror becomes disqualified and that "[a] ruling to effect such a change in a jury is a matter within the discretion of the trial court and will not be disturbed on review unless an abuse of discretion is shown." *Johnson,* 757 P.2d at 1100. Rejecting the defendant's argument that the removal of the juror had denied him the right to a fair trial, the court held that "[a]lthough defendant is entitled to a trial by a fair and impartial jury, he is not entitled to any particular juror." *Id.* The court found that the defendant had failed to show that the resulting juror was unfair or biased or that he was prejudiced by the removal of the juror. *Id.* Similarly, in *Flath v. Madison Metal Services, Inc.,* 212 Ill.App.3d 367, 156 Ill.Dec. 496, 570 N.E.2d 1218 (1991), the Appellate Court of Illinois upheld the dismissal of a juror who informed the trial judge that he had prejudged the case. The court stated:

"The general principle is that discharge of a juror is a matter of discretion with the trial judge, and prejudice must be shown in order to warrant reversal. As to the test of discretion, a trial court must have some legitimate reason for discharge in order to avoid the appearance of being arbitrary in the face of objection." (Citations omitted).

*Flath,* 156 Ill.Dec. at 504, 570 N.E.2d at 1226. *See also Skinner v. State,* 575 A.2d 1108, 1121 (Del.1990) ("a decision

not to discharge a juror following *voir dire* into an incident will not be overturned without a showing of a prejudicial abuse of discretion by the court"); *People v. Clarke*, 168 A.D.2d 686, 564 N.Y.S.2d 184, 184 (N.Y.App.Div.1990) (dismissal of juror for speaking with attorney in case was proper exercise of court's discretion); *Hopkins*, 500 N.E.2d at 325 (noting that the decision to excuse a juror is a discretionary one).

Where, as in the instant case, a trial judge has excused a seated juror and replaced that juror with an alternate based on a proper reason that is particular to that specific juror and not based on the improper exclusion of a class of persons, we will give deference to this determination and will not reverse absent a clear abuse of discretion or prejudice.[6] In the instant case, both the trial judge and counsel questioned the juror in

---

**6.** We find most of the cases cited by Cook to be either distinguishable or supportive of the principles we have applied in the instant case. *See United States v. Brown*, 823 F.2d 591 (D.C.Cir.1987) (regarding the removal of a juror after jury deliberations had begun); *United States v. McAnderson*, 914 F.2d 934, 944 (7th Cir.1990) (noting that a trial court has broad discretion to replace a seated juror with an alternate and the trial court properly exercised that discretion in this case); *Hartley v. State*, 516 So.2d 802, 805 (Ala.Crim.App.1986) (stating in dicta that a juror's comments should be investigated by the judge and noting that "[w]hether alleged juror misconduct has resulted in an impartial trial is to be determined by the trial judge and his decision will be reversed only for clear abuse of discretion"); *State v. Villeneuve*, 155 Vt. 360, 584 A.2d 1123, 1126 (1990) (holding that it was an abuse of discretion for a trial judge to remove a juror without any inquiry by the court or an examination of the juror where such removal was based solely on the "remote possibility that she might have some reason lurking in the background why she could not be impartial"). Cook also cites several New York cases which we do not find instructive, as New York's statutes providing for the replacement of a seated juror are distinguishable from our own. *See People v. Anderson*, 70 N.Y.2d 729, 519 N.Y.S.2d 957, 514 N.E.2d 377 (1987); *People v. Cargill*, 70 N.Y.2d 687, 518 N.Y.S.2d 792, 512 N.E.2d 313 (1987); *People v. Buford*, 69 N.Y.2d 290, 514 N.Y.S.2d 191, 506 N.E.2d 901 (1987).

Cook further relies on *Wilson v. Morris*, 317 Md. 284, 563 A.2d 392 (1989). In *Wilson*, a civil case, plaintiff made a motion for mistrial alleging that a seated juror should be excused for making biased comments in a courthouse hallway and that there was no alternate juror. The court refused to declare a mistrial. We held that the trial judge should have conducted voir dire before allowing the juror to remain on the jury. *Wilson* is inapposite to the instant case.

chambers regarding the content of his note. After this discussion, the trial judge found the juror's explanations to be "dubious" and further found that the juror had failed to follow the court's instructions to not form an opinion prior to the presentation of all of the evidence in the case. We hold that there was an adequate basis for the trial judge's findings in the record, and we will not substitute our judgment for that of the trial judge who had the opportunity to view the demeanor of the juror while we have only the cold record before us. Thus, we conclude that the trial judge did not abuse his discretion in removing the juror and replacing him with an alternate and there was no showing of any prejudice to Cook which should be remedied by a new trial.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE TRIAL COURT. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*