EUGENE STEMEN *et al.*, Plaintiffs-Appellees, v. AVON PRODUCTS, INC., Defendant-Appellant.

First District (2nd Division)  No. 1—91—0529

Opinion filed August 11, 1992.

Gorham, Metge, Bowman & Hourigan, of Chicago (Robert J. Hourigan and Bruce C. Spitzer, of counsel), for appellant.

Drumke & Patterson, Ltd., of Chicago (Robert B. Patterson and Danielle M. Jaeschke, of counsel), for appellees.

JUSTICE McCORMICK delivered the opinion of the court:

Eugene Stemen, an over-the-road truck driver, sustained injuries when the door of a trailer he was inspecting closed on him in a lot owned by Avon Products, Inc. (Avon). He had been unable to use the side latch to keep the door open because the trailers were parked too close together in the lot. He and his wife sued Avon for negligence in operation of the lot. A jury found the parties equally negligent, and it found that plaintiffs sustained damages of $450,000. The trial court entered judgment on the verdict, reducing the damages by plaintiff's 50% comparative negligence, and defendant appeals.

On March 14, 1983, after plaintiff dropped off a loaded trailer at defendant's plant in Glenview, plaintiff's dispatcher told him to pick up an empty trailer in defendant's lot.

Plaintiff noticed damage to the upper right corner of the trailer he was to pick up. The outside of the trailer had caved in and a hunk of metal protruded four inches from the trailer. Plaintiff opened the right rear door of the trailer, which must be opened first because it overlaps the left door. He found that he could not swing the door all the way open to use the latch on the right side of the trailer to latch the door open because the trailer was parked too close to the trailer next to it. He looked around for a wire or a board to hold the door open, but he did not find anything. He inspected the inside of the trailer. As he was stepping down from the trailer, facing its inside, the door swung around and hit his back and the back of his head and neck. He has been physically unable to work as a truck driver since the accident, but he has found other work at much lower pay. He has also paid substantial medical bills for treatment of the injury.

At trial James Ornduff, the manager of defendant's transportation department in Glenview, testified that the latches on the sides of trailers are designed "[t]o keep the doors from swinging, generally when [the trailers] are in motion." He agreed that the "latch is there also to prevent the doors from swinging when the trailer is stopped,"

to prevent the door from injuring people working near the door. He admitted that March is not a busy month, and that when plaintiff came to pick up the empty trailer, the trailers could have been separated by four feet to allow the doors to swing all the way open to the latch. He also agreed that the trailers could have been parked at an angle to the side of the lot, as the trailers in that lot had been parked that way at times in the past. He agreed that if trailers were parked that way, the doors could have been latched open. He knew that damaged trailers were parked in the lot at times and that drivers picking up trailers generally inspect them. He did not know of any special procedures drivers would use for inspecting damaged trailers.

Ornduff testified that he expected drivers to take various steps to protect themselves from swinging doors. Drivers could pull the trailers out, or back them up far enough to permit the doors to swing to the latch or they could use cords or baling wire to hold the doors. The arrangement of trailers in defendant's lot was a standard arrangement. When truckers dropped off trailers, the yard was normally "empty of people." The yardman "might be anywhere on through the process. He may be moving trailers. He might have been [in defendant's other lot] across the street."

Plaintiff testified that there may have been room to back the trailer onto the grass towards a fence to latch open the door before inspecting it, but he would not want to move a damaged trailer before inspection. He did not remember any trailer to the left of the trailer he picked up. Drivers would not normally open both the right and left doors, latch the left door open and latch the right door closed, to make an inspection. Drivers generally do not carry baling wire, and he had none with him. He did not ask anyone for help because inspection is a one-person job. There is no single prevalent pattern for parking empty trailers, but the pattern and spacing defendant used was not uncommon.

Roland Ruhl, a professor of engineering, testified as an expert for plaintiff that the side latch is designed to keep the door in a safe position because a swinging door is dangerous. Requiring drivers to inspect trailers parked in the manner defendant used, defeating the safety latch on the side of the trailer, is unreasonably dangerous. If a trailer is damaged, the driver should not move the trailer before determining the extent of the damage. The extent of the damage to the trailer is in doubt until the columns are inspected from inside the truck. There is no uniform manner for parking trailers.

■ Defendant argues that the jury verdict must be reversed because plaintiffs failed to prove that defendant owed them a duty.

Defendant admits that plaintiff was its business invitee when he was injured on defendant's property. Illinois has adopted section 343 of the Restatement (Second) of Torts (1965), which establishes that a landowner has a duty to exercise reasonable care to protect invitees from physical harm caused by

" 'a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it.' " *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 146, 554 N.E.2d 223, quoting Restatement (Second) of Torts §343 (1965).

Defendant does not deny that as a landowner it had the general duty to plaintiff to use reasonable care to keep its premises safe. In effect, defendant argues that the evidence cannot support a finding that defendant breached its admitted duty to plaintiff because the parking arrangement did not involve an unreasonable risk of harm.

"Nearly all human acts, of course, carry some recognizable but remote possibility of harm to another." (W. Keeton, Prosser & Keeton on Torts §31, at 170 (5th ed. 1984).) To determine whether a risk is unreasonable, the court should take into account the likelihood of injury, the gravity of the threatened injury, the burden of guarding against the injury and the consequences of placing the burden on defendant. *Smith v. Goldman* (1977), 53 Ill. App. 3d 632, 634, 368 N.E.2d 1052; see W. Keeton, Prosser & Keeton on Torts §32, at 173 (5th ed. 1984).

Plaintiffs' expert testified that the parking arrangement was unreasonably dangerous because it defeated the safety latch. As defendant points out, the risk of harm was relatively small because drivers picking up undamaged vehicles could move them prior to inspection, and some other drivers would have wire to secure the doors. Plaintiffs presented no evidence of the occurrence of similar accidents.

Ornduff's testimony provides evidence that the cost to defendant of parking trailers so that the latch would be accessible was small under the circumstances of this case. He testified that the trailers could have been parked four feet apart, to allow the doors to latch open, when there were few trailers in the lot. In general, there were few trailers in the lot during March, and there were few there on the day that plaintiff was injured. Ornduff also said that trailers could have been parked at an angle with respect to the side of the lot. He did not

say that either of these measures would have imposed any costs on defendant.

■■ Where the burden of protecting against an injury is slight, even a remote danger of an accident of a sort which has never occurred before may be unreasonable. (*Ward*, 136 Ill. 2d at 154.) Here, although the likelihood of the injury was small, its gravity was considerable, and the burden on defendant of guarding against the injury was slight. The record does not show any untoward consequences of imposing on defendant a duty to keep trailers in a manner which allows drivers to latch the doors open for inspection prior to moving them. On balancing the risk of harm against the burden of protection, we agree with the trial court's conclusion that defendant's management of the parking area involved an unreasonable risk of harm.

The trial court's holding finds support in *Flath v. Madison Metal Services, Inc.* (1991), 212 Ill. App. 3d 367, 570 N.E.2d 1218. There, the plaintiff was a truck driver who picked up a load from defendant and then attempted to secure the load while he was in the loading area of defendant's building. Defendant had a sign notifying drivers to secure their loads outside the building, but defendant knew that many drivers secured their loads before moving. Plaintiff chose to secure his load from the driver's side of his truck, despite the clutter on the ground to that side, while the ground on the passenger side of the truck was clear. Because of the clutter on the ground, plaintiff stood on the trailer, on the driver's side, to secure the load. While securing the load, he fell. Defendant argued that the clutter on the driver's side of the truck did not create an unreasonable risk of harm because the danger was obvious and the driver could have moved the truck before securing the load, or he could have secured the load from the other side of the truck. The appellate court found that the clutter was unreasonably dangerous, reasoning:

> "Because obstructions prevented him from doing so from the ground, plaintiff was forced to secure the load while standing on the trailer bed, from which he fell, sustaining injuries. We find this is sufficient to conclude that the presence of defendant's materials along the driver's side of the loading area created an unreasonable risk of harm to plaintiff. That plaintiff might have been able to secure his load from the ground on the passenger side of the trailer, or by driving his truck forward out of the building, may reflect on the degree of plaintiff's comparative fault, but does not make the obstruction any less dangerous." *Flath*, 212 Ill. App. 3d at 373.

The reasoning of *Flath* is fully applicable to this case. Here, the jury's verdict shows that it took defendant's evidence into account in assessing plaintiff's comparative negligence. The trial court properly concluded that defendant created an unreasonable risk of harm in violation of its duty to plaintiffs.

Even if the condition on defendant's land involves an unreasonable risk of harm, defendant cannot be liable to invitees under section 343 of the Restatement (Second) of Torts for an obvious danger unless defendant "should expect that they *** will fail to protect themselves against it." (Restatement (Second) of Torts §343 (1965).) Plaintiff concedes that he recognized the obvious danger from the unlatched door. He contends that defendant should have realized that drivers would not protect themselves against it.

Ornduff testified that he expected drivers to protect themselves from the danger of unsecured doors by moving the trailers before opening the doors or by using cords to hold the doors. Plaintiff decided not to move the trailer because of the apparent damage to the outside of the trailer, and he presented evidence that he would have risked further damage to the trailer if he moved it before determining the extent of the damage. Ornduff knew that at times damaged trailers were parked in defendant's lot, and drivers picking up the trailers would inspect them. Plaintiff looked for baling wire to hold the door, but found none; he testified that drivers do not generally carry their own cords.

Defendant also argues that plaintiff could have used the left door, which he could have latched to the side of the truck. Plaintiff testified that drivers normally open only the right door to inspect a truck. To latch the left door to the side of the truck, plaintiff would have needed to open the right door, leaving it unsecured while he opened and latched the left door open, and then latched the right door closed. When his inspection was complete, he would need to open the right door, leaving it unsecured while he unlatched and then closed the left door, before closing the right door. The entire procedure would have cost plaintiff extra effort for a gain in safety that was marginal at best, since he would have stood in the path of the unsecured door for almost as much time as he actually spent in its path. There is evidence that defendant should have expected plaintiff not to take this extra precaution.

Defendant suggests that plaintiff could have asked the yardman to hold the door while plaintiff inspected the truck, but plaintiff testified that truckers would not make such a request, and inspection was a one-person job. Moreover, Ornduff testified that the yardman was

normally not in the yard, so plaintiff could have spent considerable time looking for such assistance with no assurance that if he found the yardman, he would agree to hold the door. Again, there is evidence that defendant should have expected plaintiff to expose himself to a known, albeit remote, danger rather than pursuing the abnormal and potentially futile course defendant suggests. In this case, as in *Flath*, although the danger of the unsecured door was obvious and known to plaintiff, "defendant should have reasonably expected that plaintiff would proceed to encounter the danger because, to a reasonable man in plaintiff's position, the advantages of doing so would have outweighed the apparent risk of doing so." *Flath*, 212 Ill. App. 3d at 374.

Here, defendant attempts to distinguish *Flath* based on that court's statement that "for reasons which do not clearly appear in the record, plaintiff felt the need to secure his load on the driver's side." (*Flath*, 212 Ill. App. 3d at 373.) In this case, plaintiff said that he opened only the right door for his inspection because this took less effort and drivers generally do their inspections that way. The failure of plaintiff in *Flath* to give any explanation for his preference cannot be grounds for awarding him damages and denying damages to plaintiff herein.

Defendant also argues that plaintiff's negligence was a supervening cause of his injury, so that defendant's negligence cannot be a proximate cause of the injury. "A proximate cause is one which produces the injury through a natural and continuous sequence of events unbroken by any effective intervening cause." (*Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360, 361, 493 N.E.2d 372.) An independent act of a third party may become an intervening proximate cause which breaks the causal connection between defendant's act and plaintiff's harm. (*Kemp*, 143 Ill. App. 3d 360.) However, "[t]he intervention of a new intervening cause does not necessarily relieve one of responsibility for a negligent act when the intervening cause of the injury is of such nature as could reasonably have been anticipated." (*Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 90, 508 N.E.2d 1201.) Thus, as applied to this case, the requirement of proximate cause is covered by section 343(b) of the Restatement (Second) of Torts: Defendant is liable for injury caused by an obvious hazard only if it should reasonably have anticipated that plaintiff would expose himself to the possibility of this harm. Plaintiff has persuaded a jury that defendant should have expected him not to take the difficult safety measures which could have prevented this accident after defendant defeated the most obvious

safety device, the latch on the side of the truck. Plaintiff has shown that defendant's negligence was a contributing proximate cause of his injury.

Finally, defendant contends that the danger of a swinging door is inherent in plaintiff's trade because many lots are arranged like defendant's, with trailers too close together to allow use of side latches for doors. We disagree. Despite the common practice, the danger is not a necessary part of truck driving.

Defendant relies on *Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 381 N.E.2d 709, in support of its argument. The plaintiff in *Longnecker* was a lineman whose job involved climbing utility poles. Linemen were responsible for finding and informing defendant of poles which were not safe to climb, and they were instructed not to climb unsafe poles. The plaintiff saw evidence of weakness in the pole he was climbing, but he decided to proceed farther up the pole. In this case, by contrast, discovering improper or unsafe arrangements for parking trailers was not part of plaintiff's job. Plaintiff would have been acting contrary to instructions if he failed to inspect the trailer because he did not see a safe way to do so; the plaintiff in *Longnecker* acted contrary to instructions when he proceeded up a pole after seeing evidence that it was unsafe.

Therefore, defendant's arrangement of its parking lot created an unreasonable risk of harm which was not inherent in plaintiff's trade. Although plaintiff acted negligently in failing to take precautions which would have prevented this injury, the evidence supports the jury's finding that defendant violated its duty of care and that violation, together with plaintiff's negligence, proximately caused plaintiff's injuries. The judgment entered on the jury's verdict is affirmed.

Affirmed.

HARTMAN, P.J., and SCARIANO, J., concur.