WILLIAM BURSE, Plaintiff-Appellant, v. CR INDUSTRIES, INC., *et al.*, Defendants-Appellees.

Second District   No. 2—96—0713

Opinion filed May 13, 1997.

John C. Ambrose, of Ambrose & Cushing, P.C., of Chicago, for appellant.

Barry L. Kroll, Michael J. Pacer, Daniel K. Cray, and Lloyd E. Williams, Jr., all of Williams & Montgomery, Ltd., of Chicago, for appellees.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, William Burse, appeals from the May 13, 1996, order of the circuit court of Kane County denying his motion to reconsider an earlier order granting summary judgment on behalf of the defendants, CR Industries, Inc., CR Investments, Inc., and Chicago Rawhide Manufacturing Company (collectively referred to as Chicago Rawhide). In granting summary judgment, the trial court found that Chicago Rawhide owed no duty to the plaintiff as a matter of law. We affirm.

The facts necessary to the disposition of this appeal are as follows. In February 1990, the plaintiff was a truck driver employed by Wheeling Transportation (Wheeling). Wheeling had contracted for the exclusive right to haul Chicago Rawhide's goods and freight. The plaintiff's primary job responsibility was to haul Chicago Rawhide's freight from Chicago Rawhide's plant in Elgin to locations in Oklahoma, Ohio, Toronto, North Carolina, South Carolina, South Dakota, and Illinois.

Under the written transportation agreement between Wheeling and Chicago Rawhide, Wheeling's transportation services were described as those of an independent contractor. The agreement provided that Wheeling would furnish drivers and tractors to Chicago Rawhide for the purpose of shipping its goods to various destinations. The agreement further provided that Chicago Rawhide would load and unload the goods from the trailer at the points of pick up and delivery.

On February 5, 1990, Wheeling's dispatcher instructed the plaintiff to pick up a Wheeling tractor and go to Chicago Rawhide's Elgin plant. Once at the plant, the plaintiff was to tarp a load of steel pallet racks and to haul the load to Toronto. Tarping is a process in which a tarp is rolled over the load and secured at all sides. Although Chicago Rawhide was responsible for determining whether a load was to be tarped, Wheeling was responsible for performing the actual tarping. The plaintiff had tarped and hauled steel for Chicago Rawhide on numerous prior occasions and was familiar with the operation of the Elgin plant and yard. The plaintiff understood that Chicago Rawhide employees were forbidden to provide assistance in the tarping of any loads.

After the plaintiff arrived at the yard, he hooked his tractor to a Chicago Rawhide flatbed trailer that had already been loaded with steel. He then backed the truck into the loading bay of the receiving dock, so that he could have a place to stand while tarping the load. The dock, however, was not of a sufficient height for the plaintiff to

reach the top of the load; the dock was 3 feet above the ground, while the top of the load was 13 feet above the ground. Due to this height difference, the plaintiff encountered difficulty in tarping the load.

After making several unsuccessful attempts at tarping the load, the plaintiff went to speak with Orley Cain, who was Chicago Rawhide's traffic manager. The plaintiff told Cain that the load was very high for a flatbed trailer and that there was no suitable platform or other place for tarping. He asked Cain whether it would be necessary to tarp the load before leaving the yard. Cain replied that the load had to be tarped and that, if the plaintiff needed help, he should contact Wheeling.

Two other Wheeling drivers, who happened to be at the Elgin plant at the time, assisted the plaintiff with the tarping procedure for 15 or 20 minutes. Even with this assistance, however, the plaintiff was only able to tarp a small portion of the load. After the other drivers departed, the plaintiff contacted Wheeling's dispatcher and explained that it was almost impossible to tarp the load. The dispatcher told the plaintiff to "do the best you can."

At no time did the plaintiff ask Cain or any other Chicago Rawhide employee for assistance in tarping the load. Nor did he ever request any type of support device or equipment from Chicago Rawhide. The plaintiff did not make such requests because it was his understanding that Wheeling personnel were to "keep a low profile" and were not to bother Chicago Rawhide personnel. Wheeling had instructed the plaintiff to keep Chicago Rawhide happy "or else you walk."

It took the plaintiff approximately five hours to tarp the load. In order to tarp the load, the plaintiff allegedly had to climb up on top of the load, place his shoulder against part of the steel, and brace himself with one foot while holding the tarp with one hand. Although plaintiff slipped several times while climbing on the load, he never fell to the ground. The plaintiff asserts that he suffered a wrenching injury to his back from twisting and turning his body while standing with one foot on the dock and one foot up on the load.

On January 31, 1992, the plaintiff filed a negligence action against Chicago Rawhide. On February 5, 1996, he filed a second amended complaint. In the second amended complaint, he alleges that Chicago Rawhide breached its duty to provide him with a safe place to work. He alleges that this duty arose when Chicago Rawhide, through its employees, became aware that he was having difficulty tarping the load and that he did not have a platform of sufficient height to perform his work. He alleges that Chicago Rawhide knew or should have known that he had no alternative but to climb on top of the load and that such a practice was dangerous.

On January 12, 1996, Chicago Rawhide filed a motion for summary judgment, asserting that it had no control over the plaintiff's tarping activities. Relying on *Jackson v. Hilton Hotels Corp.*, 277 Ill. App. 3d 457, 464-65 (1995), Chicago Rawhide argued that it owed no duty to assist the plaintiff in the performance of his work and that there was no evidence demonstrating that it had breached its duty to provide the plaintiff a safe work area. On February 27, 1996, the trial court granted the motion for summary judgment, ruling that the case fell squarely within the rule of law articulated in *Jackson*. On May 13, 1996, the trial court denied the plaintiff's motion for reconsideration. The plaintiff filed a timely notice of appeal.

The plaintiff's sole contention on appeal is that the trial court erred in entering summary judgment when there existed genuine issues of material fact as to whether Chicago Rawhide had control over the plaintiff's work and whether it breached its duty to provide the plaintiff a safe place to work. The plaintiff also argues that the trial court erred in relying on *Jackson*, asserting that *Jackson* is distinguishable from the instant case.

■ The purpose of a motion for summary judgment is to determine whether a genuine issue of triable fact exists (*Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986)) and should be granted only when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (735 ILCS 5/2—1005(c) (West 1994)). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment is incorrect as a matter of law. *In re Estate of Herwig*, 237 Ill. App. 3d 737, 741 (1992). The disposition of a summary judgment motion is not discretionary, and the standard of review is *de novo*. *Quinton v. Kuffer*, 221 Ill. App. 3d 466, 471 (1991).

■ A complaint based upon negligence must allege facts sufficient to show the existence of a duty owed by the defendant to the plaintiff, the breach of that duty, and injury proximately resulting from the breach. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990). Whether a duty exists is a question of law for the court and depends upon whether the parties stood in such a relationship that the law would impose an obligation upon the defendant to act reasonably for the plaintiff's protection. *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535, 542 (1991).

■ It is clear that the general duty of a possessor of land is to exercise reasonable care for the safety of those who lawfully enter his premises. *Richardson v. Vaughn*, 251 Ill. App. 3d 403, 407 (1993).

Traditionally, a landowner's duty of reasonable care is generally held not to encompass hazardous conditions of which the entrant has been made aware and which are open and obvious. *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 469 (1976). In the leading case of *Ward v. K mart Corp.*, 136 Ill. 2d 132, 145-46 (1990), our supreme court held that section 343 of the Restatement (Second) of Torts (hereinafter, Restatement) accurately sets forth Illinois law with regard to the liability of landowners. Section 343 provides:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger." Restatement (Second) of Torts § 343, at 215-16 (1965).

■ In *Ward*, the supreme court also embraced section 343A of the Restatement (Second) of Torts. *Ward*, 136 Ill. 2d at 148-51. Section 343A(1) provides:

"A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1), at 218 (1965).

Liability under this subsection will arise when the landowner can foresee that the invitee's attention will be distracted at the time he encounters the obvious condition, such that he will not discover the danger and will be unable to protect himself against it. *Richardson*, 251 Ill. App. 3d at 407.

Comment *f* to section 343A of the Restatement also imposes liability on the landowner in instances where the landowner can anticipate that the invitee will purposefully encounter the open and obvious hazard because, to a reasonable man in the invitee's position, the advantages of doing so would outweigh the apparent risks. *Courtney v. Allied Filter Engineering, Inc.*, 181 Ill. App. 3d 222, 227 (1989). This rule of law has been identified as the "deliberate encounter exception" and arises in circumstances where the landowner has placed the invitee in the position of having to choose between encountering the obvious danger or foregoing his employment. *Jackson*, 277 Ill. App. 3d at 464.

In *Jackson v. Hilton Hotels Corp.*, 277 Ill. App. 3d 457, 459 (1995), the plaintiff injured his back when he attempted to lift a heavy box from the defendant's loading dock to the back of his truck. At the

time of his injury, the plaintiff was lawfully on the defendant's premises in the course of performing his duties for his employer. *Jackson*, 277 Ill. App. 3d at 459. As in the instant case, the plaintiff in *Jackson* alleged that his injury occurred because the loading dock was not of a sufficient height in relation to the trailer bed and that the defendant did not provide him the supervision and assistance necessary to safely perform his job. 277 Ill. App. 3d at 459. The plaintiff alleged that, despite the admittedly obvious difference in height between the truck and the loading dock, the injury was reasonably foreseeable because his " 'only alternative to taking the risk of lifting the gang box by hand onto the bed of the truck was to forego his employment.' " *Jackson*, 277 Ill. App. 3d at 464. The trial court dismissed the plaintiff's complaint, finding that it did not state a cause of action. *Jackson*, 277 Ill. App. 3d at 459.

The Illinois Appellate Court, First District, affirmed the dismissal, holding that "the deliberate encounter exception" did not apply to the case as the plaintiff had failed to demonstrate that his injury was the result of a dangerous condition on the defendant's premises. *Jackson*, 277 Ill. App. 3d at 465. The court explained:

"[The plaintiff's] injury did not result from any contact or interfacing with the defendant's property. The injury occurred because of the defendant's failure to provide such amenities on its loading dock which might have obviated his need to manually lift the gang box. The differential in height between the bed of the truck and the loading dock did not of itself cause any injury to [the plaintiff]. Thus, it was not a dangerous condition on the premises that caused the injury. Rather, the danger was in the task that plaintiff performed by lifting objects that were too heavy." *Jackson*, 277 Ill. App. 3d at 465-66.

■ We agree with the trial court that the facts presented in this case squarely fall within the rule of law articulated in *Jackson*. The plaintiff has failed to provide any evidence demonstrating that Chicago Rawhide's premises were defective or contained an open and obvious danger. There is no evidence that the loading dock in question was slippery, cracked, or otherwise dangerous at the time that it was used by the plaintiff. As in *Jackson*, the plaintiff's sole allegation is that the dock was not of a height that would allow him to reach the top of his load. See 277 Ill. App. 3d at 464. Lacking any evidence of a defective condition, we hold that such an allegation does not state a cause of action against Chicago Rawhide as a landowner.

For this same reason, the "deliberate encounter exception" is not applicable to the circumstances presented in this case. Lacking any defect or dangerous condition in the premises, Chicago Rawhide has

not created the type of hazard referred to in section 343A of the Restatement as a "deliberate encounter." See *Jackson*, 277 Ill. App. 3d at 464. Moreover, we do not believe that Chicago Rawhide placed the plaintiff into such a position that he was forced to choose between purposefully encountering the danger or foregoing his employment with Wheeling. When the plaintiff spoke with Cain to determine whether the load had to be tarped, Cain told him that if he needed help tarping the load he should contact Wheeling. We believe that it was reasonable for Chicago Rawhide to refer the plaintiff to Wheeling for assistance, especially in light of the fact that Wheeling was hired to provide these specific services. The plaintiff has presented no evidence tending to show that Chicago Rawhide could foresee that Wheeling would not assist its employee or that the plaintiff would lose his job if he did not tarp the load without assistance.

The plaintiff argues that the trial court's holding is inconsistent with the analysis in *Flath v. Madison Metal Services, Inc.*, 212 Ill. App. 3d 367, 374 (1991), wherein the Illinois Appellate Court, Fifth District, held that a landowner's loading area was dangerous. In *Flath*, the defendant's loading area was obstructed with debris, forcing the plaintiff to stand on his truck bed rather than on the ground while securing his load. 212 Ill. App. 3d at 370-71. As a result, the plaintiff was injured when the load suddenly slackened, and he fell to the ground. *Flath*, 212 Ill. App. 3d at 371. We find *Flath* distinguishable from the instant case, as *Flath* involved a physically dangerous condition on the land (*i.e.*, debris on the loading dock). As detailed above, the plaintiff does not allege that there was anything wrong with the surface of Chicago Rawhide's loading dock.

There is also no evidence that Chicago Rawhide had control over the plaintiff's work so as to impose upon it a special duty of care to the plaintiff. The plaintiff's employer, Wheeling, had been specifically hired to tarp and ship Chicago Rawhide's goods. The plaintiff testified that Wheeling employees were customarily required to tarp the loads before departing the yard. As Chicago Rawhide had contracted out this responsibility, it was under no obligation to supervise or assist the plaintiff with the tarping of the load. See *Pagano v. Occidental Chemical Corp.*, 257 Ill. App. 3d 905, 910 (1994). It was therefore up to the plaintiff, and his employer, to provide the necessary equipment to safely perform the tarping and shipping tasks they had been hired to perform. Lacking any identifiable defect in its premises, we fail to understand how Chicago Rawhide has breached its duty to provide plaintiff a safe place to work.

Additionally, although the plaintiff spoke with Cain to inquire whether the load had to be tarped, he never made a specific request

for equipment or assistance. Cain explicitly told the plaintiff that if he needed help tarping the load he should contact Wheeling. Chicago Rawhide therefore had no knowledge of, or control over, the manner in which the plaintiff selected to tarp the load or his decision to tarp the load on his own.

For this reason, we find *Stemen v. Avon Products, Inc.*, 234 Ill. App. 3d 300, 307 (1992), inapposite to the instant case. In *Stemen*, a truck driver was injured while inspecting a truck trailer in the defendant's crowded parking lot. 234 Ill. App. 3d at 301. Because of the close proximity of the other trucks on the lot, the driver was required to leave a trailer door only partially open. *Stemen*, 234 Ill. App. 3d at 301. The unlatched door swung back around and hit the driver's head and back. *Stemen*, 234 Ill. App. 3d at 301. The court held that the defendant's conduct of parking the trucks so closely together created an unreasonable risk of harm because it was foreseeable that truck drivers would have to open the truck doors for inspection before the trucks could be moved. *Stemen*, 234 Ill. App. 3d at 304.

Unlike *Stemen*, in the present case there was direct communication between the invitee and the landowner. As detailed above, Cain told the plaintiff to contact Wheeling if he needed assistance in tarping the load. The plaintiff understood that Chicago Rawhide had hired Wheeling to tarp the load and that Chicago Rawhide employees were not to assist in the tarping process. Therefore, although Chicago Rawhide was made aware that plaintiff was having difficulty tarping the load, it was reasonable for Chicago Rawhide to refer him to Wheeling for any necessary equipment or assistance. See *Pagano*, 257 Ill. App. 3d at 910. Lacking any knowledge of, or control over, the plaintiff's conduct, we decline to impose a duty on Chicago Rawhide. We therefore conclude that the trial court properly entered summary judgment in favor of Chicago Rawhide.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

COLWELL and THOMAS, JJ., concur.