No. 2--96--0713

                                                      

________________________________________________________________

                                     

                                  IN THE

                        APPELLATE COURT OF ILLINOIS

                              SECOND DISTRICT

________________________________________________________________

WILLIAM BURSE,                       )  Appeal from the Circuit Court

                                     )  of Kane County.

     Plaintiff-Appellant,            )

                                     )  

v.                                   )  No. 92--LKA--0080

                                     )  

CR INDUSTRIES, INC.; CR         )   

INVESTMENTS, INC.; and CHICAGO )     

RAWHIDE MANUFACTURING COMPANY,  )  Honorable

                                     )  R. Peter Grometer,

     Defendants-Appellees.           )  Judge, Presiding.             

________________________________________________________________

     PRESIDING JUSTICE GEIGER delivered the opinion of the court:

     The plaintiff, William Burse, appeals from the May 13, 1996,

order of the circuit court of Kane County denying his motion to

reconsider an earlier order granting summary judgment on behalf of

the defendants, CR Industries, Inc., CR Investments, Inc., and

Chicago Rawhide Manufacturing Company (collectively referred to as

Chicago Rawhide).  In granting summary judgment, the trial court

found that Chicago Rawhide owed no duty to the plaintiff as a

matter of law.  We affirm.

     The facts necessary to the disposition of this appeal are as

follows.  In February 1990, the plaintiff was a truck driver

employed by Wheeling Transportation (Wheeling).  Wheeling had

contracted for the exclusive right to haul Chicago Rawhide's goods

and freight.  The plaintiff's primary job responsibility was to

haul Chicago Rawhide's freight from Chicago Rawhide's plant in

Elgin to locations in Oklahoma, Ohio, Toronto, North Carolina,

South Carolina, South Dakota, and Illinois.

     Under the written transportation agreement between Wheeling

and Chicago Rawhide, Wheeling's transportation services were

described as those of an independent contractor.  The agreement

provided that Wheeling would furnish drivers and tractors to

Chicago Rawhide for the purpose of shipping its goods to various

destinations.  The agreement further provided that Chicago Rawhide

would load and unload the goods from the trailer at the points of

pick up and delivery.

     On February 5, 1990, Wheeling's dispatcher instructed the

plaintiff to pick up a Wheeling tractor and go to Chicago Rawhide's

Elgin plant.  Once at the plant, the plaintiff was to tarp a load

of steel pallet racks and to haul the load to Toronto.  Tarping is

a process in which a tarp is rolled over the load and secured at

all sides.  Although Chicago Rawhide was responsible for

determining whether a load was to be tarped, Wheeling was

responsible for performing the actual tarping.  The plaintiff had

tarped and hauled steel for Chicago Rawhide on numerous prior

occasions and was familiar with the operation of the Elgin plant

and yard.  The plaintiff understood that Chicago Rawhide employees

were forbidden to provide assistance in the tarping of any loads.

     After the plaintiff arrived at the yard, he hooked his tractor

to a Chicago Rawhide flatbed trailer that had already been loaded

with steel.  He then backed the truck into the loading bay of the

receiving dock, so that he could have a place to stand while

tarping the load.  The dock, however, was not of a sufficient

height for the plaintiff to reach the top of the load; the dock was

3 feet above the ground, while the top of the load was 13 feet

above the ground.  Due to this height difference, the plaintiff

encountered difficulty in tarping the load.

     After making several unsuccessful attempts at tarping the

load, the plaintiff went to speak with Orley Cain, who was Chicago

Rawhide's traffic manager.  The plaintiff told Cain that the load

was very high for a flatbed trailer and that there was no suitable

platform or other place for tarping.  He asked Cain whether it

would be necessary to tarp the load before leaving the yard.  Cain

replied that the load had to be tarped and that, if the plaintiff

needed help he should contact Wheeling.

     Two other Wheeling drivers, who happened to be at the Elgin

plant at the time, assisted the plaintiff with the tarping

procedure for 15 or 20 minutes.  Even with this assistance,

however, the plaintiff was only able to tarp a small portion of the

load.  After the other drivers departed, the plaintiff contacted

Wheeling's dispatcher and explained that it was almost impossible

to tarp the load.  The dispatcher told the plaintiff to "do the

best you can."

     At no time did the plaintiff ask Cain or any other Chicago

Rawhide employee for assistance in tarping the load.  Nor did he

ever request any type of support device or equipment from Chicago

Rawhide.  The plaintiff did not make such requests because it was

his understanding that Wheeling personnel were to "keep a low

profile" and were not to bother Chicago Rawhide personnel. 

Wheeling had instructed the plaintiff to keep Chicago Rawhide happy

"or else you walk."

     It took the plaintiff approximately five hours to tarp the

load.  In order to tarp the load, the plaintiff allegedly had to

climb up on top of the load, place his shoulder against part of the

steel, and brace himself with one foot while holding the tarp with

one hand.  Although plaintiff slipped several times while climbing

on the load, he never fell to the ground.  The plaintiff asserts

that he suffered a wrenching injury to his back from twisting and

turning his body while standing with one foot on the dock and one

foot up on the load.

     On January 31, 1992, the plaintiff filed a negligence action

against Chicago Rawhide.  On February 5, 1996, he filed a second

amended complaint.  In the second amended complaint, he alleges

that Chicago Rawhide breached its duty to provide him with a safe

place to work.  He alleges that this duty arose when Chicago

Rawhide, through its employees, became aware that he was having

difficulty tarping the load and that he did not have a platform of

sufficient height to perform his work.  He alleges that Chicago

Rawhide knew or should have known that he had no alternative but to

climb on top of the load and that such a practice was dangerous.

     On January 12, 1996, Chicago Rawhide filed a motion for

summary judgment, asserting that it had no control over the

plaintiff's tarping activities.  Relying on Jackson v. Hilton

Hotels Corp., 277 Ill. App. 3d 457, 464-65 (1995), Chicago Rawhide

argued that it owed no duty to assist the plaintiff in the

performance of his work and that there was no evidence

demonstrating that it had breached its duty to provide the

plaintiff a safe work area.  On February 27, 1996, the trial court

granted the motion for summary judgment, ruling that the case fell

squarely within the rule of law articulated in Jackson.  On May 13,

1996, the trial court denied the plaintiff's motion for

reconsideration.  The plaintiff filed a timely notice of appeal.

     The plaintiff's sole contention on appeal is that the trial

court erred in entering summary judgment when there existed genuine

issues of material fact as to whether Chicago Rawhide had control

over the plaintiff's work and whether it breached its duty to

provide the plaintiff a safe place to work.  The plaintiff also

argues that the trial court erred in relying on Jackson, asserting

that Jackson is distinguishable from the instant case.

     The purpose of a motion for summary judgment is to determine

whether a genuine issue of triable fact exists (Purtill v. Hess,

111 Ill. 2d 229, 240 (1986)), and should be granted only when "the

pleadings, depositions, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment

as a matter of law" (735 ILCS 5/2--1005(c) (West 1994)). An order

granting summary judgment should be reversed if the evidence shows

that a genuine issue of material fact exists or if the judgment was

incorrect as a matter of law.  In re Estate of Herwig, 237 Ill.

App. 3d 737, 741 (1992).  The disposition of a summary judgment

motion is not discretionary, and the standard of review is de novo. 

Quinton v. Kuffer, 221 Ill. App. 3d 466, 471 (1991).

     A complaint based upon negligence must allege facts sufficient

to show the existence of a duty owed by the defendant to the

plaintiff, the breach of that duty, and injury proximately

resulting from the breach.  Ward v. K mart Corp., 136 Ill. 2d 132,

140 (1990).  Whether a duty exists is a question of law for the

court and depends upon whether the parties stood in such a

relationship that the law would impose an obligation upon the

defendant to act reasonably for the plaintiff's protection.  Gouge

v. Central Illinois Public Service Co., 144 Ill. 2d 535, 542

(1991).

     It is clear that the general duty of a possessor of land is to

exercise reasonable care for the safety of those who lawfully enter

his premises.  Richardson v. Vaughn, 251 Ill. App. 3d 403, 407

(1993).  Traditionally, a landowner's duty of reasonable care is

generally held not to encompass hazardous conditions of which the

entrant had been made aware and which are open and obvious. 

Genaust v. Illinois Power Co., 62 Ill. 2d 456, 469 (1976).  In the

leading case of Ward v. K mart Corp., 136 Ill. 2d 132, 145-46

(1990), our supreme court held that section 343 of the Restatement

(Second) of Torts (hereinafter, Restatement) accurately sets forth

Illinois law with regard to the liability of landowners.  Section

343 provides:

     "A possessor of land is subject to liability for physical harm

     caused to his invitees by a condition on the land if, but only

     if, he:

          (a) knows or by the exercise of reasonable care would

     discover the condition, and should realize that it involves an

     unreasonable risk of harm to such invitees, and

          (b) should expect that they will not discover or realize

     the danger, or will fail to protect themselves against it, and

          (c) fails to exercise reasonable care to protect them

     against the danger."  Restatement (Second) of Torts §343, at

     215-16 (1965).

          In Ward, the supreme court also embraced section 343A of the

Restatement (Second) of Torts.  Ward, 136 Ill. 2d at 148-51. 

Section 343A(1) provides:

          "A possessor of land is not liable to his invitees for

     physical harm caused to them by any activity or condition on

     the land whose danger is known or obvious to them, unless the

     possessor should anticipate the harm despite such knowledge or

     obviousness."  Restatement (Second) of Torts §343A(1), at 218

     (1965).

     Liability under this subsection will arise when the landowner can

foresee that the invitee's attention will be distracted at the time

he encounters the obvious condition, such that he will not discover

the danger and will be unable to protect himself against it. 

Richardson, 251 Ill. App. 3d at 407. 

     Comment f to section 343A of the Restatement also imposes

liability on the landowner in instances where the landowner can

anticipate that the invitee will purposefully encounter the open

and obvious hazard because, to a reasonable man in the invitee's

position, the advantages of doing so would outweigh the apparent

risks.  Courtney v. Allied Filter Engineering, Inc., 181 Ill. App.

3d 222, 227 (1989).  This rule of law has been identified as the

"deliberate encounter exception" and arises in circumstances where

the landowner has placed the invitee in the position of having to

choose between encountering the obvious danger or foregoing his

employment.  Jackson, 277 Ill. App. 3d at 464.

     In Jackson v. Hilton Hotels Corp., 277 Ill. App. 3d 457, 459

(1995), the plaintiff injured his back when he attempted to lift a

heavy box from the defendant's loading dock to the back of his

truck.  At the time of his injury, the plaintiff was lawfully on

the defendant's premises in the course of performing his duties for

his employer.  Jackson, 277 Ill. App. 3d at 459.  As in the instant

case, the plaintiff in Jackson alleged that his injury occurred

because the loading dock was not of a sufficient height in relation

to the trailer bed and that the defendant did not provide him the

supervision and assistance necessary to safely perform his job. 

277 Ill. App. 3d at 459.  The plaintiff alleged that, despite the

admittedly obvious difference in height between the truck and the

loading dock, the injury was reasonably foreseeable because his

" 'only alternative to taking the risk of lifting the gang box by

hand onto the bed of the truck was to forego his employment.' " 

Jackson, 277 Ill. App. 3d at 464.  The trial court dismissed the

plaintiff's complaint, finding that it did not state a cause of

action.  Jackson, 277 Ill. App. 3d at 459.

     The Illinois Appellate Court, First District, affirmed the

dismissal, holding that "the deliberate encounter exception" did

not apply to the case as the plaintiff had failed to demonstrate

that his injury was the result of a dangerous condition on the

defendant's premises.  Jackson, 277 Ill. App. 3d at 465.  The court

explained:

          "[The plaintiff's] injury did not result from any contact

     or interfacing with the defendant's property.  The injury

     occurred because of the defendant's failure to provide such

     amenities on its loading dock which might have obviated his

     need to manually lift the gang box.  The differential in

     height between the bed of the truck and the loading dock did

     not of itself cause any injury to [the plaintiff].  Thus, it

     was not a dangerous condition on the premises that caused the

     injury.  Rather, the danger was in the task that plaintiff

     performed by lifting objects that were too heavy."  Jackson,

     277 Ill. App. 3d at 465-66.

          We agree with the trial court that the facts presented in this

case squarely fall within the rule of law articulated in Jackson. 

The plaintiff has failed to provide any evidence demonstrating that

Chicago Rawhide's premises were defective or contained an open and

obvious danger.  There is no evidence that the loading dock in

question was slippery, cracked, or otherwise dangerous at the time

that it was used by the plaintiff.  As in Jackson, the plaintiff's

sole allegation is that the dock was not of a height that would

allow him to reach the top of his load.  See 277 Ill. App. 3d at

464.  Lacking any evidence of a defective condition, we hold that

such an allegation does not state a cause of action against Chicago

Rawhide as a landowner.

     For this same reason, the "deliberate encounter exception" is

not applicable to the circumstances presented in this case. 

Lacking any defect or dangerous condition in the premises, Chicago

Rawhide has not created the type of hazard referred to in section

343A of the Restatement as a "deliberate encounter."  See Jackson,

277 Ill. App. 3d at 464.  Moreover, we do not believe that Chicago

Rawhide placed the plaintiff into such a position that he was

forced to choose between purposefully encountering the danger or

foregoing his employment with Wheeling.  When the plaintiff spoke

with Cain to determine whether the load had to be tarped, Cain told

him that if he needed help tarping the load he should contact

Wheeling.  We believe that it was reasonable for Chicago Rawhide to

refer the plaintiff to Wheeling for assistance, especially in light

of the fact that Wheeling was hired to provide these specific

services.  The plaintiff has presented no evidence tending to show

that Chicago Rawhide could foresee that Wheeling would not assist

its employee, or that the plaintiff would lose his job if he did

not tarp the load without assistance.

     The plaintiff argues that the trial court's holding is

inconsistent with the analysis in Flath v. Madison Metal Services,

Inc., 212 Ill. App. 3d 367, 374 (1991), wherein the Illinois

Appellate Court, Fifth District, held that a landowner's loading

area was dangerous.  In Flath, the defendant's loading area was

obstructed with debris, forcing the plaintiff to stand on his truck

bed rather than on the ground while securing his load.  212 Ill.

App. 3d at 370-71.  As a result, the plaintiff was injured when the

load suddenly slackened, and he fell to the ground.  Flath, 212

Ill. App. 3d at 371.  We find Flath distinguishable from the

instant case, as Flath involved a physically dangerous condition on

the land (i.e., debris on the loading dock).  As detailed above,

the plaintiff does not allege that there was anything wrong with

the surface of Chicago Rawhide's loading dock.

     There is also no evidence that Chicago Rawhide had control

over the plaintiff's work so as to impose upon it a special duty of

care to the plaintiff.  The plaintiff's employer, Wheeling, had

been specifically hired to tarp and ship Chicago Rawhide's goods. 

The plaintiff testified that Wheeling employees were customarily

required to tarp the loads before departing the yard.  As Chicago

Rawhide had contracted out this responsibility, it was under no

obligation to supervise or assist the plaintiff with the tarping of

the load.  See Pagano v. Occidental Chemical Corp., 257 Ill. App.

3d 905, 910 (1994).  It was therefore up to the plaintiff, and his

employer, to provide the necessary equipment to safely perform the

tarping and shipping tasks they had been hired to perform.  Lacking

any identifiable defect in its premises, we fail to understand how

Chicago Rawhide has breached its duty to provide plaintiff a safe

place to work.

     Additionally, although the plaintiff spoke with Cain to

inquire whether the load had to be tarped, he never made a specific

request for equipment or assistance.  Cain explicitly told the

plaintiff that if he needed help tarping the load he should contact

Wheeling.  Chicago Rawhide therefore had no knowledge of, or

control over, the manner in which the plaintiff selected to tarp

the load, or his decision to tarp the load on his own.

     For this reason, we find Stemen v. Avon Products, Inc., 234

Ill. App. 3d 300, 307 (1992), inapposite to the instant case.  In

Stemen, a truck driver was injured while inspecting a truck trailer

in the defendant's crowded parking lot.  234 Ill. App. 3d at 301. 

Because of the close proximity of the other trucks on the lot, the

driver was required to leave a trailer door only partially open. 

Stemen, 234 Ill. App. 3d at 301.  The unlatched door swung back

around and hit the driver's head and back.  Stemen, 234 Ill. App.

3d at 301.  The court held that the defendant's conduct of parking

the trucks so closely together created an unreasonable risk of harm

because it was foreseeable that truck drivers would have to open

the truck doors for inspection before the trucks could be moved. 

Stemen, 234 Ill. App. 3d at 304.

     Unlike Stemen, in the present case there was direct

communication between the invitee and the landowner.  As detailed

above, Cain told the plaintiff to contact Wheeling if he needed

assistance in tarping the load.  The plaintiff understood that

Chicago Rawhide had hired Wheeling to tarp the load and that

Chicago Rawhide employees were not to assist in the tarping

process.  Therefore, although Chicago Rawhide was made aware that

plaintiff was having difficulty tarping the load, it was reasonable

for Chicago Rawhide to refer him to Wheeling for any necessary

equipment or assistance.  See Pagano, 257 Ill. App. 3d at 910. 

Lacking any knowledge of, or control over, the plaintiff's conduct,

we decline to impose a duty on Chicago Rawhide.  We therefore

conclude that the trial court properly entered summary judgment in

favor of Chicago Rawhide.

     For the foregoing reasons, the judgment of the circuit court

of Kane County is affirmed.

     Affirmed.

     COLWELL and THOMAS, JJ., concur.